GENERAL MANUFACTURING CO., d/b/a Rockwall Manufacturing Co., Appellant,

v.

CNA LLOYD'S OF TEXAS, Appellee.

No. 05–90–00288–CV.

Court of Appeals of Texas, Dallas.

March 11, 1991.

Rehearing Denied April 15, 1991.

Rodger D. Sanders, Sherman, for appellant.

D. Bradley Dickinson, Dallas, for appellee.

Before ENOCH, C.J., and BAKER and BURNETT, JJ.

## OPINION

BAKER, Justice.

General Manufacturing Co., d/b/a Rockwall Manufacturing Co., appeals a take-nothing judgment for CNA Lloyd's of Texas. The issue involves coverage under a comprehensive general liability policy which Rockwall bought from CNA. Rockwall asserts, in thirty points of error, the trial court erred: (1) in granting CNA a partial summary judgment that no coverage existed under the policy; (2) by failing to grant judgment in Rockwall's favor on its causes of action for bad-faith denial of its claim, violations of the Texas Insurance Code, and violations of the Texas Deceptive Trade Practices Act; and (3) in its rulings on requests for admissions, the admission or exclusion of evidence, the submission of the case to the jury, and related trial matters. We conclude these claims are without merit. We affirm the trial court's judgment.

## FACTUAL BACKGROUND

Gerald McCord bought Rockwall Manufacturing in 1978. Rockwall's primary business was the manufacture and sale of double-pane insulated glass windows to

custom home builders in the Dallas/Fort Worth market. From 1978 to 1983, Rockwall's total insurance business was with Floyd West and Company. In 1983, Rockwall moved its insurance coverage to CNA.

A few months after CNA issued the new policy to Rockwall, windows manufactured by Rockwall which the builders installed in custom homes began cracking. In all, 10,027 windows cracked. Rockwall, to keep its business goodwill with its customers and mitigate its damages, replaced the windows at a cost of slightly more than $1.1 million.

Rockwall submitted a claim to CNA. CNA denied coverage based on the business risk/products exclusion in the policy. Rockwall continued to replace windows after CNA denied coverage.

## PROCEDURAL HISTORY

Rockwall sued on the policy for its loss. Later pleadings by Rockwall added causes of action for reformation of the insurance policy; bad faith in investigating, processing, and denying Rockwall's claim; violation of the Texas Insurance Code; and violation of the Texas Deceptive Trade Practices Act.

CNA moved for summary judgment on the ground that the policy provisions excluded Rockwall's loss. The trial court granted a partial summary judgment, holding that the policy did not provide coverage for Rockwall's claim. The parties tried the remaining causes of action asserted by Rockwall to a jury. The jury answered all questions for CNA. The court entered judgment in CNA's favor based on the partial summary judgment and the jury's verdict.

## THE ISSUE

The issue determinative of the entire appeal is whether the terms of the CNA policy excluded Rockwall's loss. The applicable paragraph of CNA's policy provided that its insurance did not apply:

... to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts, or equipment furnished in connection therewith; ....

## ROCKWALL'S CONTENTIONS

### 1. Cause of Action on the Policy

Rockwall maintains the trial court erred by granting CNA a partial summary judgment on the policy exclusion. Rockwall contends: (1) we must strictly construe the exclusion against CNA; (2) the policy does not exclude coverage for the liability in question; and (3) CNA may not use Rockwall's mitigation of damages to eliminate coverage otherwise available under the policy.

Without specifically alleging ambiguity in the policy exclusion, Rockwall argues that when policy language is susceptible to two or more constructions, we must strictly construe it against the insurer and liberally for the insured. *See Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex.1987). Rockwall's theory is because the home builders installed the windows before they cracked, the windows lost their identity as a mere product. Rockwall argues when incorporation of a defective product into a building causes a diminution in the building's value, the occurrence is property damage to the entire building, and CNA's policy does not exclude the claim. Rockwall cites *Missouri Terrazzo Co. v. Iowa National Mutual Insurance Co.*, 740 F.2d 647 (8th Cir.1984) and *Travelers Insurance Co. v. Volentine*, 578 S.W.2d 501 (Tex.Civ. App.—Texarkana 1979, no writ).

First, Rockwall's assertion that the exclusion is ambiguous as a matter of law and requires strict construction against CNA is without merit. The courts of this state have construed the same exclusionary provision and found it unambiguous. *See Bateson Const. Co. v. Lumbermans Mut. Casualty Co.*, 784 S.W.2d 692, 694–95 (Tex. App.—Houston [14th Dist.] 1989, writ denied); *Travelers*, 578 S.W.2d at 503; *Eulich v. Home Indem. Co.*, 503 S.W.2d 846, 849 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.).

The policy does not insure against liability to repair or replace defective work or products. It provides coverage of the insured's liability for damages to other property resulting from the defective condition, even though the policy excludes damage to the product itself. *See Travelers,* 578 S.W.2d at 503–504; *Bateson,* 784 S.W.2d at 694–95.

Rockwall's contention that the claim involves third-party liability for diminution in value of the custom homes does not hold up. No evidence appears in the record of any claim against Rockwall for diminution in value. The only evidence in the record is a claim against Rockwall for replacement cost of the defective windows. The only evidence of Rockwall's damages arising out of the defective windows was the $1.1 million to replace the 10,027 defective windows. The claim asserted by Rockwall against CNA was for repayment of Rockwall's costs in replacing its own defective work. The claim did not reflect any claim by a third party for diminution in value of the third party's property. We hold that the CNA policy did not cover Rockwall's claim. The trial court did not err in holding the exclusion applied to Rockwall's claim.

Rockwall also argues the policy only required Rockwall to use reasonable efforts to mitigate the damages when the windows began cracking. We find Rockwall assumed the cost of replacement of its defective windows under any set of facts. Even if the builders had asserted their rights as third parties against Rockwall, and even if their claims included diminution in value of the homes, Rockwall was responsible for the cost of replacement. The policy limited CNA's responsibility to that portion of any claim asserted by a third party for diminution in value. No builder asserted such a claim.

■ Rockwall also argues estoppel operates to prevent CNA from asserting the policy exception, and public policy conflicts with CNA's reliance on the policy exclusion. Rockwall maintains the policy required CNA to pay the replacement costs directly to the builders if Rockwall had not acted to mitigate the damages. Rockwall did not raise either of these claims in response to CNA's motion for summary judgment. Rockwall cannot raise them for the first time on appeal. TEX.R.CIV.P. 166a(c); TEX.R.APP.P. 52(a); *Dorchester Dev. Corp. v. Safeco Ins. Co.,* 737 S.W.2d 380, 383 (Tex.App.—Dallas 1987, no writ).

■ Rockwall also argues the trial court should have reformed the policy to provide coverage of repair and replacement costs. Rockwall asserts both CNA's agent and Rockwall believed the CNA policy covered Rockwall's losses. We hold these contentions are without merit. An action for reformation requires two elements: (1) an original agreement, and (2) a mutual mistake made after the original agreement in reducing the original agreement to writing. *See Cherokee Water Co. v. Forderhause,* 741 S.W.2d 377, 379 (Tex.1987). No evidence appears in the record to show a mutual mistake by the parties. The evidence reflects that neither the agent nor Rockwall discussed or agreed to CNA providing coverage of Rockwall's liability for the defective windows. In fact, Rockwall did not read the policies when CNA issued them despite the agent's request that Rockwall do so. The court is without power to make a contract which the parties did not make. The reaching of an actual agreement before the drafting of the contract is a prerequisite to reformation. *Cherokee Water Co.,* 741 S.W.2d at 379.

■ Rockwall also asserts CNA waived its policy defenses. The record reflects that Rockwall did not plead waiver. Waiver is an independent ground of recovery which a party must plead and prove. TEX.R.CIV.P. 94; *Houston General Ins. Co. v. Owens,* 653 S.W.2d 93, 99 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.). A party asserting waiver must also submit a jury question or waive the claim. *Gulf Ins. Co. v. Cherry,* 704 S.W.2d 459, 463 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). We overrule Rockwall's points one through four.

### 2. Local Agent Misrepresentations

■ Rockwall argues the agent's misrepresentations about the coverage entitles it

to recover under either the Insurance Code or the Deceptive Trade Practices Act. *See* TEX.INS.CODE ANN. art. 21.21, § 16 (Vernon 1989); TEX.BUS. & COM.CODE ANN. § 17.46(b)(2) (Vernon 1987). Rockwall concedes it never expected or believed the policy entitled Rockwall to recover for damages to the product itself. Rockwall argues, however, that CNA promised to provide coverage to protect against third-party liability.

Rockwall asserts the trial court should have framed the submission of the misrepresentation jury question under either the Insurance Code or the DTPA for misrepresentation of coverage for third-party liability. Rockwall's argument misses the mark. There is no question that the policy covered Rockwall for claims for third-party liability. However, the evidence before the court and jury reflects only a claim for product failure and the resulting cost to Rockwall to replace its defective windows. Since Rockwall concedes it was not in any way entitled to recover for damages for its defective product, the trial court's submission of the question to the jury and the jury's answer is immaterial to Rockwall's right of recovery. *See Dorchester,* 737 S.W.2d at 384.

■ The same rationale applies to Rockwall's assertion that CNA's bad faith in failing to pay the claim entitled it to judgment. To show a breach of CNA's duty of good faith and fair dealing by refusing to pay Rockwall's claim, Rockwall must show the absence of a reasonable basis for denying payment of the claim and that CNA knew or should have known it had no reasonable basis for denying the claim. *See Aranda v. Insurance Co. of N. Am.,* 748 S.W.2d 210, 213 (Tex.1988). Rockwall's claim fails on both counts. The evidence shows the claim asserted by Rockwall was only for Rockwall's cost to replace and repair the defective windows. Since the specific policy provision excluded that claim, CNA not only had a reasonable basis for denying the claim but one which was contractually available. Also, the jury found in response to the question submitted by Rockwall that CNA did not act in bad faith. Rockwall has not attacked that jury finding. We overrule Rockwall's points of error five, six, and seven.

## CONDUCT OF THE TRIAL

In its points of error numbered eight through thirty, Rockwall complains of the trial court's errors in failing to deem requests for admissions admitted, in refusing to admit certain evidence and in admitting other evidence, in submitting the charge to the jury, in refusing to allow plaintiff's counsel to read testimony to the jury during argument, and in improperly answering a question asked by the jury after deliberation began. We have reviewed each of these additional points of error. We conclude that if any of the assertions are in fact error, they are harmless because of the conclusions we have reached on the application of CNA's policy exclusion. We overrule Rockwall's points of error eight through thirty.

We affirm the trial court's judgment.