Adams v. Grt. Am. Lloyds 



 IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-692-CV





FRED ADAMS,



 APPELLANT


vs.





GREAT AMERICAN LLOYD'S INSURANCE CO.,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT



NO. 92-06268, HONORABLE HUME COFER, JUDGE PRESIDING




 




 Appellee Great American Lloyd's Insurance Co. ("Lloyd's") originally brought a
declaratory judgment action against The Elliott System, Inc. ("Elliott"), the former employer of
appellant Fred Adams. In a final summary judgment, the trial court declared that Lloyd's
commercial liability policy did not cover damages Adams incurred due to Elliott's negligent
failure to include Adams on its health insurance policy. By two points of error, Adams argues
that the trial court erred in granting summary judgment for Lloyd's. We will affirm the trial-court
judgment.



THE CONTROVERSY


 Elliott hired Adams on December 21, 1989, as a full-time apartment complex
manager. Elliott promised Adams that he would be enrolled in its medical insurance plan once
he had completed three months of full-time work. On March 21, 1989, Adams completed three
months of full-time work, but Elliott failed to enroll Adams in its health insurance plan with the
Aetna Life Insurance Company. In April 1990, Adams suffered severe kidney failure that
required hospitalization. Because Elliott had not enrolled Adams, Aetna refused to cover Adams's
medical expenses; the plan would have covered these expenses had Adams been enrolled.

 Adams sued Elliott in state court on negligence and breach of contract theories;
Elliott removed the case to federal court on the basis that the Employee Retirement Income
Security Act governed the action. See 29 U.S.C. §§ 1001-1461 (1988) (since amended)
(hereinafter "ERISA"). Lloyd's, Elliott's commercial liability carrier, refused to defend Elliott
on the ground that the commercial liability policy ("the policy") did not cover Adams's claim. 
After a bench trial, the federal court found Elliott negligent and rendered a judgment awarding
Adams the damages ERISA permitted: medical expenses, attorney's fees, and interest. While the
case was pending in federal district court, Lloyd's filed the present declaratory judgment action
against Elliott in state court, seeking a declaration that Lloyd's had no obligation to pay any
judgment that Adams obtained against Elliott. After the judgment in federal court, Elliott assigned
its cause of action against Lloyd's to Adams, Adams was substituted for Elliott as the defendant
in the declaratory judgment action, and Lloyd's moved for summary judgment.

 At the summary judgment hearing, Lloyd's contended that Adams's damages for
medical costs constituted economic loss which, as a matter of law, the policy did not cover. The
policy provides, in relevant part:



COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY


1. Insuring Agreement


 a. We will pay those sums that the insured becomes legally obligated to
pay as damages because of "bodily injury" or "property damage" to
which this insurance applies.

 

 . . .

 

 "Property damage" means:


 a. Physical injury to tangible property, including all resulting loss of use
of that property; or

 b. Loss of use of tangible property that is not physically injured.



In response, Adams first contended that his damages fell within the coverage provision for bodily
injury, arguing that he had pleaded for mental anguish damages in his state-court petition against
Elliott and that mental anguish constitutes bodily injury. The trial court concluded that the
federal-court judgment established the measure of Adams's recoverable damages because the
policy provides coverage only for sums "that the insured becomes legally obligated to pay as
damages . . . ." Because the federal judgment pursuant to ERISA limited Adams's award to
medical costs, the trial court concluded that no mental anguish damages were recoverable and,
hence, that there was no coverage under the bodily injury provision. (1)

 Adams next contended that his damages were covered under the property damage
coverage provision. While Adams did not argue that he sustained physical damage to tangible
property, he argued that he had lost the use of the group insurance policy, which he contended
was tangible property and thus was covered under Lloyd's policy. The trial court concluded that
Adams's damages constituted economic loss and ruled as a matter of law that the coverage
provision for property damage did not cover any form of economic loss. Having ruled that
neither the property damage nor bodily injury provision covered Adams's damages, the trial court
granted summary judgment for Lloyd's.



DISCUSSION


 To sustain its summary judgment, Lloyd's must show that it is entitled to judgment
as a matter of law. Tex. R. Civ. P. 166-A(c); Rodriguez v. Naylor Indus., Inc., 763 S.W.2d 411,
413 (Tex. 1989). In an insurance coverage dispute, the policy must be strictly construed against
the insurer. Ramsay v. Maryland Am. Gen. Ins. Co., 533 S.W.2d 344, 349 (Tex. 1976). We
must reverse the summary judgment in favor of Lloyd's if any reasonable interpretation of the
policy affords coverage in this cause, even if that interpretation is not the most reasonable one. 
National Union Fire Ins. Co. v. Hudson Energy Co., Inc., 811 S.W.2d 552, 555 (Tex. 1991).



A. Policy Coverage Analysis

 In his first point of error, Adams urges that the trial court erred in granting
summary judgment for Lloyd's on the basis that his claim was one for economic loss and,
therefore, was not covered by the policy. He argues that the policy does not specifically exclude
recovery for "economic loss," making the trial court's ruling tantamount to a hidden exclusion for
economic loss without reference to the actual coverage terms. We agree.

 In an insurance coverage dispute, the language of the policy determines the
insurer's liability. Daca, Inc. v. Commonwealth Land Title Ins. Co., 822 S.W.2d 360, 364 (Tex.
App.--Houston [1st Dist.] 1992, writ denied). A trial court's primary concern in determining the
extent of coverage is to enforce the terms of the policy as written. Gaulden v. Johnson, 801
S.W.2d 561, 563 (Tex. App.--Dallas 1990, writ denied). Therefore, the trial court should first
examine the relevant policy language and then determine whether the loss fits within that
language. See Lay v. Aetna Ins. Co., 599 S.W.2d 684, 685-86 (Tex. Civ. App.--Austin 1980, writ
ref'd n.r.e.).

 The record reflects that the trial court characterized Adams's loss of benefits as an
economic loss and, finding policy coverage only for bodily injury or property damage, concluded
that Lloyd's liability policy did not cover his loss. Adams insists that the proper analysis focuses
on the coverage language. He points out that this language covers damages that result from loss
of use of tangible property. Adams argues that the health insurance policy is tangible property
the use of which he was wrongly deprived, resulting in liability for medical costs. Therefore, we
must first determine whether Adams's interpretation of the policy is a reasonable one. National
Union Fire Ins. Co., 811 S.W.2d at 555. To make this determination, we focus on the language
of the policy to determine the extent of coverage. An analysis of the policy language at issue
reveals that the key determination is not whether the policy covers economic loss, but whether an
insurance contract is tangible or intangible property. This question appears to be unsettled under
Texas law.

 Tangible property is capable of being handled or touched and may be evaluated by
the physical senses. Lay, 599 S.W.2d at 686. Intangible property, on the other hand, has no
physical existence but may be evidenced by a document with no intrinsic value. See Black's Law
Dictionary 809 (6th ed. 1990). In Lay, this Court classified an agreement assigning mineral
drilling rights as intangible property for the purposes of an insurance coverage clause similar to
the one presented here. Lay, 599 S.W.2d at 686. The supreme court has held that insurance
coverage rights constitute property in the nature of a "chose in action." Brown v. Lee, 371
S.W.2d 694, 696 (Tex. 1963); Seaman v. Seaman, 756 S.W.2d 56, 58 (Tex. App.--Texarkana
1988, no writ); Carter v. Massey, 668 S.W.2d 450, 452 (Tex. App.--Dallas 1984, no writ). A
chose in action is defined as the right to proceed in a court of law to recover a sum of money or
personal chattel. Black's Law Dictionary 241 (6th ed. 1990). One Texas court has indicated that
a chose in action is an intangible property right. Browne v. King, 196 S.W. 884, 887 (Tex. Civ.
App.--San Antonio 1917), aff'd, 235 S.W. 522 (Tex. 1921). As with the assignment of drilling
rights in Lay, the importance of an insurance policy lies in the intangible rights of coverage that
the policy creates and not in the document that memorializes those rights. See Kelley v. American
Ins. Co., 316 S.W.2d 452, 456 (Tex. Civ. App.--Texarkana 1958), aff'd, 325 S.W.2d 370 (Tex.
1959). This analysis is also reflected in the Tax Code, which classifies insurance policies as
intangible property. Tex. Tax Code Ann. § 1.04(6) (West 1992). The Fifth Circuit, relying upon
Lay, has held that a petition and citation are intangible property for the purposes of property
damage liability coverage language identical to the policy in this cause. Snug Harbor, Ltd. v.
Zurich Ins., 968 F.2d 538, 543 (5th. Cir. 1992). Based upon the foregoing authority, we
conclude that coverage rights under an insurance policy should be classified as intangible property
for purposes of the liability policy language at issue in this cause.

 Because Adams's damages resulted from the loss of use of intangible property, no
reasonable construction of the Lloyd's policy affords coverage for those damages. Therefore, the
trial court properly granted summary judgment in favor of Lloyd's. National Union Fire Ins. Co.,
811 S.W.2d at 555. We overrule Adams's first point of error.



B. Policy Exclusion

 As an alternative ground for sustaining the trial court's summary judgment, Lloyd's
cites a contractual liability exclusion in the policy. Because we hold that the Lloyd's policy does
not cover appellant's legally recoverable damages, we need not consider the effect of a coverage
exclusion.



CONCLUSION


 Adams's legally recoverable damages, as established by his federal-court judgment
pursuant to ERISA, resulted from the loss of use of intangible property, namely insurance
coverage rights. Because the insurance policy at issue cannot reasonably be construed to cover
Adams's damages, we affirm the trial court's summary judgment in favor of Lloyd's.



 

 Mack Kidd, Justice

Before Justices Jones, Kidd, and B. A. Smith

Affirmed

Filed: January 11, 1995

Publish
1. [1] In the context of employee benefit plans, ERISA preempts and displaces all state-law causes
of action and provides the exclusive remedy for the rights that it protects. 29 U.S.C. §§ 1144(a),
(c)(1) (1988); Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 144 (1990); Shaw v. Delta Air
Lines, Inc., 463 U.S. 85, 98 (1983). The federal court determined that ERISA governed Adams's
claim and did not authorize recovery for mental anguish, Adams's only potential bodily-injury
claim. See 29 U.S.C. § 1132(a) (1988 & Supp. I 1989 & Supp. V 1993).