Paul SINK, Appellant,

v.

**PROGRESSIVE COUNTY MUTUAL INSURANCE COMPANY,**
Appellee.

No. 06–00–00140–CV.

Court of Appeals of Texas,
Texarkana.

Submitted April 2, 2001.

Decided May 2, 2001.

As Clarified May 15, 2001.

716

Robert G. Moll, Hill, Rivkins & Hayden, LLP, Houston, for appellant.

Mark R. Lapidus, Burck, Lapidus & Lanza, Houston, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice ROSS.

Paul Sink appeals the trial court's judgment in favor of Progressive County Mutual Insurance Company concerning the construction of an insurance contract.

*Facts and Procedural History*

On November 23, 1996, Paul Sink, a Missouri resident, and Joshua McCauley, a Texas resident, were involved in an automobile accident in Amarillo. Progressive had issued a liability insurance policy to McCauley that was in effect at the time of the accident, with policy limits of $15,035.00 for property damage and $20,035.00/$40,035.00 for personal injuries.

The Progressive policy included the following exclusion from the insurance company's liability:

**EXCLUSIONS**

A. We do not provide *Liability Coverage* for any person:

. . . .

8. Using a vehicle without a reasonable belief that that person is entitled to do so.

This exclusion (8.) does not apply to you or any family member while using your covered auto.

The policy also included the following definitions:

G. "Your covered auto" means:

. . . .

4. Any auto or trailer you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

 a. breakdown;

 b. repair;

 c. servicing;

 d. loss; or

 e. destruction.

Exclusion 8 was relied on by Progressive to deny coverage to McCauley. The evidence showed that McCauley's insured vehicle, a 1985 GMC pickup, had become disabled and he had borrowed a 1996 Chevrolet Monte Carlo from Alamo Rent–A–Car, his employer at the time, to go pick up his tools so he could work on the truck. The accident occurred as McCauley was returning to work. Sink sued as a third-party beneficiary of the insurance policy between Progressive and McCauley. Sink contends that the policy provided coverage to McCauley because he was driving the Alamo car as a temporary substitute vehicle for his regular vehicle.

Sink first sued McCauley in Harris County in 1997, but the case was eventually transferred to Potter County Court in Amarillo. After Sink's suit was filed in Harris County, Progressive filed a separate declaratory judgment action against McCauley in the Potter County Court at Law, seeking a declaration that under the policy, it was not required to provide coverage to McCauley. Judgment was rendered for Sink in Potter County, and he was awarded damages by the Potter County court. Progressive also received a favorable judgment, the Potter County court holding that it had no obligation to McCauley under the circumstances and in view of the declarations of the policy.

McCauley and his wife then filed for bankruptcy and received discharge of the obligation owed to Sink. Sink obtained the right of action against Progressive from the bankruptcy court and sued Progressive in Harris County District Court, this cause of action. Sink claimed the status of a third-party beneficiary of the insurance policy between McCauley and Progressive, and sought to recover the policy limits, as well as the total amount of the judgment rendered against McCauley under a *Stowers*[1] cause of action, breach of duty to settle, and violation of certain provisions of the Texas Insurance Code. The amount Sink sought was at least $380,000.00, plus interest, exemplary damages, and attorney's fees.

On July 17, 2000, the trial court found, in this action, that the bankruptcy court in which McCauley's bankruptcy petition had been filed had ruled that Sink could not pursue any of his extra-contractual actions against Progressive, noting that such ruling was on appeal. The trial court severed the contractual claims (this case) from the extra-contractual claims.

On the same date, the contractual action was called for trial, a jury was empaneled, and opening statements were made. However, the trial court concluded that there was nothing for the jury to decide, because the sole issue to be determined was a matter of law, and dismissed the jury. In

---

**1.** *G.A. Stowers Furniture Co. v. Am. Indem. Co.,* 15 S.W.2d 544 (Tex. Comm'n App.1929, holding approved).

its final judgment, the trial court ordered that Sink take nothing against Progressive on his breach of contract claim. Sink now appeals from that judgment.

Sink concedes that the trial court correctly determined that the issue was one of law and not of fact.

The precise issue to be determined in this case, a matter of first impression in this state, is whether the policy's exclusion from coverage of a vehicle used by the insured without a reasonable belief that he or she is entitled to do so, also applies to the provision of the policy covering an insured's use of a temporary substitute vehicle used while the named insured vehicle is temporarily out of service. In other words, does the fact that the insured was using a vehicle without the permission of its owner automatically exclude liability coverage, even if the vehicle was being used as a temporary substitute vehicle?

■ The parties do not dispute the general principles which guide our determination. The construction of an insurance policy, like other written contracts, is a question of law to be determined by the court. *Coker v. Coker,* 650 S.W.2d 391, 393–94 (Tex.1983); *Century Marine, Inc. v. Vaglica,* 27 S.W.3d 703, 708 (Tex.App.— Beaumont 2000, pet. filed).

■ The general rules regarding the interpretation of contracts govern our in-terpretation of insurance policies. A contract is unambiguous as a matter of law if it can be given a definite or certain legal meaning. If the insurance policy is subject to more than one reasonable interpretation, it is ambiguous and the interpretation most favoring the insured is adopted. Ambiguity does not arise, however, simply because the parties advance conflicting interpretations. *Grain Dealers Mut. Ins. Co. v. McKee,* 943 S.W.2d 455, 458 (Tex. 1997).

*Failure to Meet Burden of Proof*

Progressive initially argues that the trial court's judgment should be affirmed because Sink failed to meet his required evidentiary burden.

■ In general, an insured bears the initial burden of showing that there is coverage under an insurance policy and the insurer bears the burden of proving the applicability of an exclusion which permits it to deny coverage. Once the insurer proves the applicability of an exclusion, the burden then shifts back to the insured to demonstrate that he or she has coverage under an exception to the exclusion. *Tele-pak v. United Servs. Auto. Ass'n,* 887 S.W.2d 506, 507–08 (Tex.App.—San Antonio 1994, writ denied); *see Guar. Nat'l Ins. Co. v. Vic Mfg. Co.,* 143 F.3d 192, 193 (5th Cir.1998).[2]

---

2. TEX. INS.CODE ANN. art. 21.58(b) (Vernon Supp.2001) provides:

In any suit to recover under a contract of insurance, the insurer has the burden of proof as to any avoidance or affirmative defense that must be affirmatively pleaded under the Texas Rules of Civil Procedure. Any language of exclusion in the policy and any exception to coverage claimed by the insurer constitutes an avoidance or an affirmative defense.

TEX.R. CIV. P. 94 provides in part:

Where the suit is on an insurance contract which insures against certain general haz-ards, but contains other provisions limiting such general liability, the party suing on such contract shall never be required to allege that the loss was not due to a risk or cause coming within any of the exceptions specified in the contract, nor shall the insurer be allowed to raise such issue unless it shall specifically allege that the loss was due to a risk or cause coming within a particular exception to the general liability; provided that nothing herein shall be construed to change the burden of proof on such issue as it now exists.

■ Progressive pled that McCauley was using a vehicle without a reasonable belief that he was entitled to do so and thereby sustained its burden of proving an exclusion from coverage.[3] It contends there is no probative evidence to support Sink's contention that McCauley "borrowed" the Alamo car because his own vehicle had become disabled. However, the statement of facts in Progressive's brief fails to contradict the assertions in Sink's brief that McCauley's vehicle had become disabled and that he was using the Alamo car as a substitute for his own vehicle. TEX.R.APP. P. 38.1(f) provides, in part, that in a civil appeal the court of appeals will accept as true the facts stated unless another party contradicts them. *See Roberts v. Roberts,* 999 S.W.2d 424, 439 (Tex.App.—El Paso 1999, no pet.). Further, Progressive acknowledges that Sink is contending McCauley took the Alamo car because his own car was disabled, and it does not contend that the event did not occur. Finally, Progressive contends that the deposition testimony of John Scott Huntington, which was offered by Sink on a bill of exception, that McCauley told an employee of Progressive why he was driving the Alamo car that day, was hearsay. Progressive did object to a question in the deposition that sought to elicit this information on the ground that it called for hearsay. However, no objection was made to the following testimony in the same deposition:

QUESTION: And the information supplied to Progressive was that Joshua McCauley was driving the vehicle because his 1985 GMC 1500 pickup had broken down....

ANSWER: That's correct.

The focus of Progressive's position is that the Alamo car did not qualify as a temporary substitute vehicle, not because evidence that McCauley's own vehicle had become disabled is lacking, but because the Alamo car had been taken without permission. We conclude that Sink met his evidentiary burden, and Progressive's contention to the contrary is overruled.

### Interpretation of the Exclusion Provision v. Temporary Substitute Auto

■ Progressive focuses on McCauley's use of the Alamo vehicle without permission and without reasonable belief of his entitlement to do so. Its contention is that such use disqualifies the vehicle as a temporary substitute vehicle.[4]

Its initial argument is based on the language found in the order of the State Board of Insurance, dated August 8, 1980, and introduced into evidence in this case. In this order, the Board of Insurance adopted, as the standard form of an automobile insurance policy in this State, the "Texas Personal Auto Policy" (TPAP), re-

---

3. We find that Sink's counsel conceded, in argument before the trial court, that McCauley did not have permission, or a reasonable belief that he was entitled, to use the vehicle belonging to Alamo. We view these statements as a judicial admission of this fact, i.e., a formal statement by a party or his attorney in the course of a judicial proceeding which removes an admitted fact from the field of controversy. *Mobil Oil Co. v. Dodd,* 515 S.W.2d 351, 353 (Tex.Civ.App.—Corpus Christi 1974, no writ).

4. In its brief, Progressive refers to the vehicle belonging to Alamo and used by McCauley as "stolen." In his reply brief, Sink takes umbrage at this characterization and asks that Progressive's characterization be stricken. We concur with Sink that Progressive's characterization is probably unwarranted, since the word "stolen" implies an intent by McCauley to withhold the vehicle from Alamo permanently and there is nothing in the record to support that conclusion. Progressive's characterization had no effect on our interpretation of this policy.

placing the "Texas Family Automobile Policy" (TFAP). That order states, in part, as follows:

> Due to the certain differences between the Texas Personal Auto Policy and the Texas Family Automobile Policy, which the Texas Personal Auto Policy replaces, the Board is of the opinion that some expression of its intent is desirable. The promulgation of the Texas Personal Auto Policy in place of the Texas Family Automobile Policy is intended by the State Board of Insurance to state more clearly the contract between the insured and insurer. The State Board of Insurance herein states its intention to be that unless the Texas Personal Auto Policy has clearly changed the scope and nature of a coverage from that provided by the Family Automobile Policy, the courts should be guided by prior decisions construing the provisions of the Family Automobile Policy.

There was no dispute before the trial court that the TFAP defined the term "temporary substitute automobile" as meaning any automobile or trailer, not owned by the named insured, while temporarily used *with the permission of the owner* as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss, or destruction. There was also no dispute that the TPAP policy defines as one type of automobile covered under the policy, "[a]ny auto or trailer you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use. . . . " The phrase "with the permission of the owner" was removed from this particular definition.

In *Vidaurri v. Maryland Cas. Co.*, 444 S.W.2d 767 (Tex.Civ.App.—San Antonio 1969, writ ref'd n.r.e.), cited by Progressive, the court was required to determine, under the above-quoted provision of the TFAP, whether the insured was operating the vehicle, admittedly used as a substitute due to the breakdown of his own vehicle, with the permission of the owner. In holding that permission had not been given, the court of appeals was interpreting the language contained in the automobile liability policy in effect at that time. *See id.*

■■■■ Progressive asks us, based on the statement of intention of the Board of Insurance in its 1980 order, to continue to judicially interpret the "temporary substitute auto" provision as if the "permission" language were still contained in the policy. This we cannot do. The *Vidaurri* decision cannot support such an argument because that decision was clearly based on the court's interpretation of the language in the insurance policy at that time. There would not have been a lawsuit in *Vidaurri* if the "permission" language had been absent from the policy. In interpreting a statutory enactment involving amendment of a previous enactment by removal of certain language, we are required to give effect to a deletion of language by the Legislature; we may not simply disregard it. *Buckner Glass & Mirror, Inc. v. T.A. Pritchard Co.*, 697 S.W.2d 712, 714 (Tex. App.—Corpus Christi 1985, no writ). In interpreting a contractual provision, we are not authorized to revise an agreement while professing to construe it. *Gen. Am. Indem. Co. v. Pepper*, 161 Tex. 263, 339 S.W.2d 660, 661 (1960).

We therefore examine the pertinent language used in Progressive's policy. We note first that the phrase "any person" as used in the exclusion has generally been interpreted to mean just that, *any* person. For example, in *Close v. Ebertz*, 583 N.W.2d 794 (N.D.1998), the Supreme Court of North Dakota construed an exclusion in an automobile policy, worded as follows:

A. We do not provide Liability Coverage for *any person:*

. . . .

8. Using an "auto" without a reasonable belief that a person is entitled to do so.

*Id.* at 796 (emphasis added). After analyzing numerous cases from other jurisdictions, the court concluded that the term "any person" was not ambiguous, that it had no technical or restricted definition in the policy, and that it should be given its common meaning. It held that a family member was included as "any person" and that the fifteen-year-old son of a policyholder, who took the family van without permission and caused an accident resulting in damages and injuries, was not covered under the liability policy. *Id.* at 796–97.

Had Progressive's policy in this case contained the "any person" language in the exclusion, Progressive would clearly prevail.

 However, the exclusion in Progressive's policy contains the specific exception that the particular exclusion does not apply to the insured while driving a covered automobile, defined as including a temporary substitute vehicle. In *Close,* the North Dakota court noted that some of the policy exclusions in that case had specific exceptions, while the entitlement exclusion did not. Whether the exclusions contained specific contractual exceptions was one of the important factors to consider regarding the applicability of the exclusion. *Id.* at 798. As we stated earlier, we are not at liberty to disregard specific language in a contract, including an insurance contract. When construing written contracts, the court's duty is to ascertain the true intentions of the parties as expressed in the instrument. *Cadle Co. v. Collin Creek Phase II Assocs., Ltd.,* 998 S.W.2d 718, 723 (Tex.App.—Texarkana 1999, no pet.). All provisions of a contract must be given effect so that none are rendered meaningless. *Chandler v. Chandler,* 991 S.W.2d 367, 396 (Tex.App.—El Paso 1999, pet. denied), *cert. denied,* 529 U.S. 1054, 120 S.Ct. 1557, 146 L.Ed.2d 462 (2000).

Interpreting this contract, and giving effect to all of its provisions, we hold that the trial court erred in holding that the entitlement exclusion contained in Progressive's policy applied to Joshua McCauley. The evidence shows that McCauley, the insured, at the time of the accident was driving a temporary substitute vehicle because his own vehicle had become disabled. The unambiguous language of the policy indicated that in such a situation, the entitlement exclusion did not apply. We cannot, through intent expressed outside the contract itself, render the exception to the exclusion meaningless.

The judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion.