VENTURE V. ATLANTIC

(comment: 1)

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-020-CV

VENTURE ENCODING SERVICE, INC. APPELLANT

V.

ATLANTIC MUTUAL INSURANCE COMPANY APPELLEE

------------

FROM THE 17
TH
 DISTRICT COURT OF TARRANT COUNTY

------------

OPINION ON REHEARING

------------

Atlantic Mutual Insurance Company, appellee, has filed a motion for rehearing, which we hereby deny.  We withdraw our prior opinion and judgment of October 10, 2002 and issue this new opinion to address some of the issues appellee and the dissent to our opinion on rehearing have raised.

Venture Encoding Service, Inc., appellant, appeals from the trial court’s grant of summary judgment in favor of Atlantic Mutual Insurance Company, appellee, in connection with appellant’s insurance claim against appellee, its insurer, under its printing errors and omissions coverage.  We reverse and render in part and remand in part.

Factual Background

Appellant is a Fort Worth, Texas based printing company.  Under the terms of its agreement with one of its customers, Sallie Mae Servicing Corporation, it was to produce, print, and mail customer coupon payment books to Sallie Mae’s customers.  In mid-July 2000, appellant printed and mailed 568,875 coupon payment books directly to Sallie Mae customers per the agreement.  Unfortunately, it printed the wrong lock box payment return address on 328,799 of them.  Appellant reprinted the erroneous books with the correct lock box and re-mailed new ones to those customers who had received the defective ones.  The cost of reprinting and re-mailing was $122,888.  

The summary judgment evidence showed that appellant acquired a commercial general liability policy (CGL Policy) with a one million dollar “Printers Errors and Omissions Policy” (Printers E & O Policy) rider from appellee.  Appellant paid $7,084 for the CGL Policy and an additional $2,806 for the Printers E & O Policy.  Appellant filed a claim with appellee under the Printers E & O Policy for the $122,888.  Appellee denied the claim, which resulted in this suit.  

Both parties filed motions for summary judgment.  Appellee moved for summary judgment on one theory: that the exclusion clause of the Printers E & O Policy applied to the costs or damages incurred by appellant because the reprinting was for the “correction, repair or replacement of property damage” to appellant’s product.  The trial court granted appellee’s motion.  This appeal followed.

Issues Presented

In two issues appellant challenges the trial court’s judgment.  First, appellant asks whether a policy exclusion for “property damage incurred in the correction, repair or replacement of the insured’s products” applies to economic damages incurred by the insured under its Printers E & O Policy.  Second, appellant asks whether costs incurred to correct a printing error under a contractual obligation are covered as sums the insured is “legally obligated to pay.” 

Standard of Review

When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence and determine all questions presented.  
FM Props. Operating Co. v. City of Austin,
 22 S.W.3d 868, 872 (Tex. 2000).  The reviewing court should render the judgment that the trial court should have rendered.  
Id.
  When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm the summary judgment if any of the summary judgment grounds are meritorious.  
See Star-Telegram, Inc. v. Doe
, 915 S.W.2d 471, 473 (Tex. 1995).

Burden of Proof and Contract Interpretation

Article 21.58(b) of the Texas Insurance Code
 provides:

In any suit to recover under a contract of insurance, the insurer has the burden of proof as to any avoidance or affirmative defense that must be affirmatively pleaded under the Texas Rules of Civil Procedure.  Any language of exclusion in the policy and any exception to coverage claimed by the insurer constitutes an avoidance or an affirmative defense.

Tex. Ins. Code Ann.
 art. 21.58(b) (Vernon Supp. 2002).

Rule 94 of the Texas Rules of Civil Procedure provides in part:

Where the suit is on an insurance contract which insures against certain general hazards, but contains other provisions limiting such general liability, the party suing on such contract shall never be required to allege that the loss was not due to a risk or cause coming within any of the exceptions specified in the contract, nor shall the insurer be allowed to raise such issue unless it shall specifically allege that the loss was due to a risk or cause coming within a particular exception to the general liability; provided that nothing herein shall be construed to change the burden of proof on such issue as it now exists.

Tex. R. Civ. P.
 94.

In general, an insured bears the initial burden of showing that there is coverage under an insurance policy and the insurer bears the burden of proving the applicability of an exclusion that permits it to deny coverage.  Once the insurer proves the applicability of an exclusion, the burden then shifts back to the insured to demonstrate that he or she has coverage under an exception to the exclusion.  
Sink v. Progressive County Mut. Ins. Co.
, 47 S.W.3d 715, 718 (Tex. App.—Texarkana 2001, pet. granted) (citing
 Telepak v. United Servs. Auto. Ass'n
, 887 S.W.2d 506, 507-08 (Tex. App.—San Antonio 1994, writ denied)); 
see Guar. Nat'l Ins. Co. v. Vic Mfg. Co.
, 143 F.3d 192, 193 (5th Cir. 1998).

The construction of an insurance policy, like other written contracts, is a question of law to be determined by the court.  
State Farm Life Ins. Co. v. Beaston, 
907 S.W.2d 430, 433 (Tex. 1995); 
Coker v. Coker
, 650 S.W.2d 391, 393-94 (Tex. 1983).
  The general rules regarding the interpretation of contracts govern our interpretation of insurance policies.  “A contract is unambiguous as a matter of law if it can be given a definite or certain legal meaning.”  
Grain Dealers Mut. Ins. Co. v. McKee
, 943 S.W.2d 455, 458 (Tex. 1997); 
Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.
, 940 S.W.2d 587, 589 (Tex. 1996).  “If a contract is not ambiguous, the words used in the contract are to be given their ordinary meaning.” 
 
CU Lloyd's of Tex. v. Main St. Homes, Inc.
, 79 S.W.3d 687, 695 (Tex. App.—Austin 2002, no pet.) (citing
 Puckett v. U.S. Fire Ins. Co.
, 678 S.W.2d 936, 938 (Tex. 1984)).  If the insurance policy is subject to more than one reasonable interpretation, it is ambiguous and the interpretation most favoring the insured is adopted.  Ambiguity does not arise, however, simply because the parties advance conflicting interpretations.  
See 
 
CU Lloyd's of Tex.
, 79 S.W.3d at 695.

Here, both parties properly asserted their bases for coverage, exclusion, and exception.  The appellee properly raised the section “l” exclusion as its basis for denying the claim in its original answer.  In response, appellant asserted the inapplicability of Exclusion “I” as well as the applicability of the exception to the exclusion clause.  Because we believe the policy is unambiguous, we will determine its plain meaning by looking to the terms of both documents together.

Discussion

The Policy

Key to resolution of the issues presented is the policy language.  The Printers E & O Policy provides:

1. Insuring Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages arising out of any negligent act, error or omission committed by . . . the insured in the course of providing or failing to provide “printing services” which occur during the policy period.

. . . .

2. Exclusions:

This insurance does not apply to:

. . . .

b. Any claim for damages resulting in “bodily injury” or “property damage;”

. . . .

l. 
costs or damages incurred for the correction, or repair or replacement of “property damage” to:

(1) “Your product” arising out of such products, or any part of such products; 
or

(2) Work performed by or on behalf of the named insured arising out of the work or any portion of it, or out of the materials, parts or equipment furnished in connection with such work; [sic]

This exclusion does not apply to damages incurred due to the withdrawal or inspection of such products or work because of any known or suspected defects or deficiency therein.
  [Emphasis added.]

. . . .

Section V - Definitions

. . . . 

6. “Printing services” means those activities relating to the work of production and peculiar to the printing, publishing or graphic arts industries.

7. 
“Property damage” means:

a. Physical injury to tangible property, including all resulting loss of use of that property; or

b. Loss of use of tangible property that is not physically injured.

. . . . 

9. “Your product” means:

a. Any goods of [sic] products (other than real property) manufactured, sold, handled, distributed or disposed of by: . . . You . . . . 

. . . .

“Your product” includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in a. . . . above.  [Emphasis added.] 

The parties agree the payment books fall within the definition of “your product” under the Printers E & O Policy, Section V, 9, and appellee did not deny that printing services were involved.  They disagree on whether this loss falls within the meaning of “property damage” in exclusion clause “l” and whether the exception to Exclusion “l” applies. 

Application

Appellant contends that its claim is not one for “property damage” as defined under the primary standard CGL Policy, or even for “property damage” using the definition in Exclusion “l” of the Printers E & O Policy.  Also, appellant contends that even if its claim was for property damage under Exclusion “l”, there is an exception to Exclusion “l” that specifically applies:  “This exclusion does not apply to damages incurred due to the withdrawal or inspection of such products or work because of any known or suspected defects or deficiency therein.”  Lastly, appellant contends that the economic damages it is seeking arise from appellant’s fulfillment of its contractual obligations to Sallie Mae.  Appellant asserts it was “legally obligated” to incur the costs associated with correcting its mistake, so that it complies with the opening paragraph of the Printers E & O Policy that limits coverage to those obligations that the insured is “legally obligated to pay.” 

Appellant frames its primary issue as whether an insured's economic damages fit within the Printers E & O Policy exclusion from coverage for property damage incurred in the correction, repair or replacement of the insured's product.  To answer this issue, appellant first focuses on whether incorrectly printed information is tangible property.  Appellant argues Exclusion “l” applies only if appellant seeks coverage for the cost of correcting, repairing, or replacing “physical injury” or “loss of use” of tangible property.  This argument is based on the Printers E & O Policy's definition of “property damage,” which requires physical injury or loss of use of tangible property that is not physically incurred.  Appellant contends that its damages do not fit within the policy definition of “property damage” because its damages are solely economic damages.  Appellant notes the distinction between CGL policies, which generally exclude coverage for “business risks,” and Printers E & O policies, which include coverage.  In particular, appellant notes that Exclusion “l” in the Printers E & O Policy is required to “coordinate the coverage provided under it . . . with that of the CGL coverage part.”  Appellant argues that both the CGL Policy and the Printers E & O Policy exclude coverage for property damages arising out of its product but contends its damages are “economic” not “property damages.”  Otherwise, the $2,800 additional premium it paid would be worthless if it excluded the insured's economic losses incurred to correct its printing errors.  While appellee concedes that its Printers E & O Policy includes ”liability coverage for economic damages,” it contends it is limited to economic damages “sustained by third parties.”  We disagree, and do so on the basis of Exclusion “l” to the Printers E & O Policy.

First, for Exclusion “l” of the Printers E & O Policy to apply there must be “property damage” defined as “[p]hysical injury to tangible property . . . or [l]oss of use of tangible property that is not physically injured.”  While appellant admits the coupon books themselves are tangible property, it contends the error or damage here relates to the incorrect information, i.e., the wrong lock box.  We agree.

Error in information is intangible property not tangible property.  
See Adams v. Great Am. Lloyd's Ins. Co.
, 891 S.W.2d 769, 772 (Tex. App.—Austin 1995, no writ).
  Damage to intangible property constitutes economic loss, not property damage. 
 
See State Farm Lloyds v. Kessler
, 932 S.W.2d 732, 737 (Tex. App.—Fort Worth 1996, writ denied);
 
Adams
, 891 S.W.2d at 772
;
 
Houston Petroleum Co. v. Highlands Ins. Co.
, 830 S.W.2d 153, 156 (Tex. App.—Houston [1
st
 Dist.] 1990, writ denied)
.
  Thus, because there is no “property damage,” we hold Exclusion “l” does not apply.  Therefore, we sustain appellant's issue 1, “a.”  We do not reach sub-issues “b” and “c” of appellant's first  issue because our disposition of “a” renders the resolution of those questions unnecessary for final disposition of the appeal.  However, before we turn to appellant's second issue, we address the arguments made by the appellee and the dissent regarding the application of the “sistership exclusion.”

This exclusion was first discussed by our Texas Supreme Court in
 Gulf Insurance Co. v. Parker Products, Inc.
, 498 S.W.2d 676 (Tex. 1973).  There, the supreme court defined the “sistership exclusion” from a CGL policy:

It denies coverage for claims based upon the cost of withdrawing a product from the market, replacing a product or the loss of use of a product which is temporarily or permanently withdrawn . . . because of occurrences involving the same or similar product.

Id.
 at 678.  The dissent says the “sistership exclusion” found in Exclusion “l” prevents coverage for any damages related to replacement of the defective work.  This assertion is incorrect for several reasons.

First, all the cases cited by the dissent and appellee interpret “sistership exclusions” found in CGL policies as opposed to special endorsements like the Printers E & O Policy here.  CGL policies are restricted to bodily injury and property damage whereas the purpose of the Printers E & O Policy is to protect against specific business risks, i.e., printer mistakes.  As noted in 
Snug Harbor, Ltd. v. Zurich Insurance
: 

Errors and omissions policies exclude damage to tangible property but cover damages sustained as a result of an act or omission—for example, claims made against professionals and business entities where one party receives notice for another and fails to properly or timely forward that notice:  

An errors-and-omissions policy is professional-liability insurance providing a specialized and limited type of coverage as compared to comprehensive insurance; it is designed to insure members of a particular professional group from the liability arising out of a special risk such as negligence, omissions, mistakes and errors inherent in the practice of the professions.

968 F.2d 538, 543 n.16 (5th Cir. 1992).

Secondly, the alleged “sistership exclusion,” if any, contained within the Printers E & O Policy is actually contained within the exception to Exclusion “l”:

This exclusion does not apply to damages incurred due to the withdrawal or inspection of such products or work because of any known or suspected defects or deficiency therein.

The dissent complains that this interpretation of the exception would render the exclusion meaningless whereas we believe the dissent's interpretation of  Exclusion “l” and its exception would render the entire Printers E & O Policy practically useless.  When confronted with interpreting parts and provisions of two parts of a contract, we are to interpret the contract to give all contract provisions effect.  
Balandran v. Safeco Ins. Co.
, 972 S.W.2d 738, 741 (Tex. 1998); 
Autobond Acceptance Corp. v. Progressive N. Ins. Co.
, 76 S.W.3d 489, 493 (Tex. App.—Houston [14
th
 Dist.] 2002, pet. denied)
; Commercial Union Assurance Co. v. Silva
, 75 S.W.3d 1, 3 (Tex. App.—San Antonio 2001, pet. denied);
 Betco Scaffolds Co. v. Houston United Cas. Ins. Co.
, 29 S.W.3d 341, 344 (Tex. App.—Houston [14
th
 Dist.] 2000, no pet.) (en banc) (op. on reh'g).
  Therefore, we conclude that the exception to Exclusion “l” is, in reality, the reverse of a “sistership exclusion,” i.e., it adds back coverage that might not otherwise be there.

In appellant’s second issue it asks whether the costs incurred in correcting a printing error to fulfill a contractual obligation are covered sums for which an insured is “legally obligated to pay.”  The opening paragraph of the Printers E & O Policy limits coverage to “those sums that the insured becomes legally obligated to pay as damages arising out of any negligent act, error or omission” while providing printing services. 

A review of the appellant’s agreement with Sallie Mae shows that appellant was contractually obligated to meet certain quality control standards, including replacement of any defective coupon books within forty-eight hours of notification.  Under paragraph 6.1 of their agreement any corrective action the appellant took was to be at its expense and “at no additional charge to Sallie Mae Servicing.”  Also, paragraph 6.2 of the Sallie Mae Agreement obligated appellant to pay any costs or expenses for negligent performance.  Specifically, that paragraph says:

6.2 LIMITATIONS OF LIABILITY

Venture shall be liable for any losses, costs, damages and expenses incurred . . . as a result of Venture’s failure to perform its obligations hereunder . . . Venture shall be liable for and indemnify Sallie Mae Servicing from, all damages caused by the negligence or wilful misconduct of Venture, its employees or agents.  

Because the insured had a legal obligation under the terms of its contract with Sallie Mae to remedy and correct any mistakes or errors in printing services, we conclude appellant’s damages are sums that the insured incurred in correcting a mistake or deficiency in covered products or printing services.  We also conclude that this insured was legally obligated to pay or incur the expenses necessary to remedy the misprinted books.

Because the exception to the exclusion applied and appellant was legally obligated to incur any damages necessary to correct its printing error, appellee breached its contract with appellant by not paying the claim.  Thus, the trial court erred in granting summary judgment for appellee regarding coverage and in denying appellant’s motion for summary judgment regarding coverage.  Because appellee breached its contract, appellant was also entitled to reasonable and necessary attorneys' fees under section 38.001 of the civil practices and remedies code.  
Tex. Civ. Prac. & Rem. Code Ann.
 
§ 38.001 (
Vernon 1997); 
see also Grapevine Excavation, Inc. v. Maryland Lloyds, 
35 S.W.3d 1, 5 (Tex. 2000).
  Because appellant did not raise an issue or point in its brief regarding its claim for penalty damages under article 21.55 of the insurance code, that claim is waived and appellant is not entitled to additional damages under section 6 of article 21.55 of the insurance code.  
Tex. Ins. Code Ann.
 art. 21.55, § 6; 
Tex. R. App. P
. 33.1(a), 38.1(e).

Conclusion

In summary, we reverse the trial court’s summary judgment in favor of appellee, render summary judgment for appellant on its coverage claim, exclusive of its article 21.55 claim, and grant appellant its attorneys' fees, pre-and post-judgment interest, and costs.  
Tex. R. App. P.
 43.2, 43.3, 43.4.  We remand the case to the trial court for calculation of damages and entry of judgment in accordance with this opinion and for any further necessary proceedings regarding awards of attorneys' fees and costs in connection with the underlying trial and this appeal.

TERRIE LIVINGSTON

JUSTICE

PANEL A: CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

CAYCE, C.J. filed a dissenting opinion.

DELIVERED: MAY 1, 2003

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-020-CV

VENTURE ENCODING SERVICE, INC. APPELLANT

V.

ATLANTIC MUTUAL INSURANCE COMPANY APPELLEE

------------

FROM THE 17
TH
 DISTRICT COURT OF TARRANT COUNTY

------------

DISSENTING OPINION ON REHEARING

------------

I dissent to the court’s opinion denying appellee’s motion for rehearing.  I would grant the motion and affirm the trial court’s summary judgment because Exclusion “l” of the printer’s E & O form specifically excludes from coverage replacement costs due to the insured’s faulty workmanship.  

The clear and unambiguous intent of Exclusion “l” is to preclude from coverage replacement costs incurred by Venture Encoding Service Inc.’s faulty workmanship.  This type of “business risk” exclusion is common in liability policies, the purpose of which is to “provide protection to the insured for personal injury or for property damage caused by the completed product, 
but not for the replacement and repair of that product
.”  
T.C. Bateson Constr. Co. v. Lumbermens Mut. Cas. Co.
, 784 S.W.2d 692, 694-95 (Tex. App.—Houston [14
th
 Dist.] 1989, writ denied) (emphasis supplied); 
see also
 
Sarabia v. Aetna Cas. & Sur. Co.
, 749 S.W.2d 157, 157 (Tex. App.—El Paso 1988, no writ) (“It is uniformly held that a liability policy containing such an exclusion does not insure the policyholder against liability to repair or replace his own defective work or product . . . .”); 
Travelers Ins. Co. v. Volentine
, 578 S.W.2d 501, 503-04 (Tex. Civ. App.—Texarkana 1979, no writ)
 (same).  The justification for treating these two risks differently “is that the insured can control the quality of the goods and services he supplies, while accidental injury to property or persons exposes him to almost limitless liability.”  
Bateson
, 784 S.W.2d at 695.  As the 
Bateson
 court noted:

[T]he exclusions are designed to protect insurers from contractors’ attempts to recover funds to correct deficiencies caused by the contractors’ questionable performance.  Their use demonstrates the insurers’ belief that the cost of not performing well is a cost of doing business and not considered part of the risk sharing scheme for which general liability policies are written.

Id.
  Thus, a contractor “cannot recover from the insurer for his own failure to perform his contract, but can recover for damages 
other than to his own work
, whether or not that work is defective.”  
Hartford Cas. Co. v. Cruse
, 938 F.2d 601, 603 (5th Cir. 1991) (emphasis supplied) (internal quotation omitted).

The exception to Exclusion “l” provides coverage for bodily injury, property damage, or other economic loss resulting from Venture’s faulty workmanship.  It does not, as the majority incorrectly holds, insure Venture against liability to replace its own defective work—coverage expressly precluded by Exclusion “l.”  
See Gulf Ins. Co. v. Parker Prods., Inc.
, 498 S.W.2d 676, 678-79 (Tex. 1973) (explaining “sistership” exclusion); 
Gen. Mfg. Co. v. CNA Lloyd’s of Tex.
, 806 S.W.2d 297, 300 (Tex. App.—Dallas 1991, writ denied) (construing business risk exclusion); 
see also Taylor v. Travelers Ins. Co.
, 40 F.3d 79, 82 (5th Cir. 1994) (holding that liability policy containing business risk exclusion does not insure the policy holder against liability to repair or replace his own defective work or product).  The majority’s novel reading of the exception to provide coverage precluded by Exclusion “l” renders the exclusion meaningless and enlarges coverage beyond what the express terms of the policy provide.

For these reasons, I dissent.

JOHN CAYCE

CHIEF JUSTICE

DELIVERED:  MAY 1, 2003

COMMENTS AND ANNOTATIONS
Comment 1:
Original Opinion 10-10-02 w/drawn; Opinion on Reh'g 5-01-03 by Justice Livingston, dissent to Opinion on Reh'g by Chief Justice Cayce.