COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS


THE BURLINGTON NORTHERN AND     §
SANTA FE RAILWAY COMPANY
F/K/A/ THE ATCHISON, TOPEKA AND    §            No. 08-06-00022-CV
SANTA FE RAILWAY COMPANY,

                            §             Appeal from the
          Appellant,
                            §      41st Judicial District Court
v.
                            §      of El Paso County, Texas

NATIONAL UNION FIRE INSURANCE    §         (TC# 2000-1286)
COMPANY OF PITTSBURGH, PA,
                            §
          Appellee.


**O P I N I O N**

The Burlington Northern and Santa Fe Railway Company ("BNSF" or "the railroad") appeals the entry of summary judgment in favor of National Union Fire Insurance Company ("National Union"). The trial court below entered a take-nothing judgment that determined that National Union did not have a duty to defend the railroad, and that the railroad had no right to indemnity. The railroad raises four issues challenging the entry of judgment on both claims.

In February of 1994, BNSF entered into a three-year contract with SSI Mobley for vegetation control along the railroad's right-of-ways in Texas. As part of the contract, SSI Mobley agreed to purchase a comprehensive general liability policy and a contractual liability policy insuring itself for one million dollars per occurrence, or three million dollars aggregate.[1]

_____

[1] In relevant part, the contract's "Insurance Provision" provided as follows:

Contractor shall, at its sole cost and expense, provide:

SSI Mobley also agreed that BNSF would be named as an "additional insured" on the policies, with coverage to extend to incidents occurring within fifty feet of a railroad track. SSI Mobley purchased the required insurance from National Union.

BNSF filed this lawsuit against National Union following the insurance company's decision to deny the railroad's claims for defense and indemnity for liability arising out of a railroad crossing accident near Shallowater, Texas. On August 25, 1995, two people were killed and a third was injured when a BNSF train collided with an automobile. The decedents' families ("Lara" and "Rosales") sued the railroad alleging, in part, that the collision was caused by the railroad's failure to properly maintain the vegetation at the crossing. BNSF settled one of the cases, and the second proceeded to a multi-million dollar jury verdict.

BNSF and National Union filed competing summary judgment motions in early 2002. The trial court denied National Union's motion on May 30, 2002. On June 5, 2003, the trial court granted partial summary judgment in the railroad's favor on the insurance company's duty to defend and BNSF's indemnity claim. The order provided that damages would be determined at a later date.

On July 8, 2003, National Union filed a motion to reconsider the partial summary judgment order. There is no record that the trial court ruled on this motion expressly. On

.        .        .

(b)     Comprehensive General Liability and Contractual Liability Policy insuring the Contractor for one million each occurrence/three million dollars aggregate ($1,000,000/$3,000,000). The Company will be named as an additional insured. The insurance must provide for coverage of incidents occurring within fifty (50) feet of a railroad track, and any provision to the contrary in the insurance policy must be specifically deleted and the insurance certificate must so state.

June 17, 2005, BNSF filed a motion for entry of final summary judgment on the damages issues remaining from the court's June 2003 partial summary judgment. On October 5, 2005, National Union filed a second motion for summary judgment, raising both traditional and no-evidence grounds. The trial court entered a final, take-nothing judgment in National Union's favor on December 27, 2005. The court withdrew its June 5, 2003, partial summary judgment order and denied the railroad's motion for entry of summary judgment on the damages issue. The trial court also granted National Union's October 5 motion for summary judgment "in all things." BNSF filed its notice of appeal on January 26, 2006.

There are four issues: (1) whether the trial court erred by granting summary judgment in National Union's favor on no-evidence grounds; (2) whether the trial court properly granted National Union's traditional motion for summary judgment, and properly denied BNSF's partial motion for summary judgment on its claim for breach of the duty to defend; (3) whether summary judgment was appropriate regarding BNSF's claim for indemnity; and (4) whether a material fact issue remains regarding apportionment of liability.

When both sides move for summary judgment, and the trial court grants one motion and denies the other, the reviewing court considers both sides' summary judgment evidence and determines all issues presented. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The reviewing court must consider all the grounds presented in both motions, and render the judgment the trial court should have rendered. *Id*. The cross motions in this case presented both traditional and no-evidence grounds for summary judgment. *See* TEX.R.CIV.P. 166a(c) and 166a(i). An appellate court reviews summary judgment *de novo*. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

We turn first to National Union's tradition motion under Rule 166a(c). The standards for reviewing traditional summary judgments are well established. In a traditional summary judgment proceeding, the standard of review on appeal asks whether the successful movant carried the burden to show that there is no genuine issue of material fact, and that the judgment was properly granted as a matter of law. *See* TEX.R.CIV.P.166a(c); *Fertic v. Spencer*, 247 S.W.3d 242, 248 (Tex.App.--El Paso 2007, pet. denied). Thus, the question before the reviewing court is limited to whether the summary judgment proof establishes as a matter of law that there is no genuine issue of material fact as to one or more elements of the underlying claim. *See Fertic*, 247 S.W.3d at 248. To resolve this question, the reviewing court will take all evidence favorable to the nonmovnat as true; and all reasonable inferences, including any doubts, must be resolved in the non-movant's favor. *Id.*, *citing Nixon v. Mr. Property Mgmt. Co., Inc.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

In Issue Two, BNSF contends the trial court erred in granting summary judgment on its duty to defend claim by misapplying the "eight corners rule." National Union responds by arguing that the trial court was correct in concluding that the petitions in the underlying personal injury lawsuits fail to allege any fact that could potentially place the claims within coverage provisions.

Whether a duty to defend exists is a question of law, reviewed *de novo*. *KLN Steel Prod. Co., Ltd. v. CNA Ins. Co.*, 278 S.W.3d 429, 434 (Tex.App.--San Antonio 2008, pet. denied). The insured bears the initial burden to establish that its claim falls within the scope of coverage provided by the policy. *CNA Ins. Co.*, 278 S.W.3d at 434. Should the insured establish a right to coverage, the burden then shifts to the insurer to demonstrate that the claim is subject to a policy

exclusion. *Venture Encoding Serv., Inc. v. Atl. Mut. Ins. Co.*, 107 S.W.3d 729, 733 (Tex.App.--Fort Worth 2003, pet. denied). If the insurer is able to establish that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within the terms of the policy. *Id.*

Generally, the duty to defend is dependant on the type and scope of coverage provided by the policy agreement. *See King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002). An insurer's duty to defend is determined according to the "eight corners," or "complaint allegations" rule. *See id.* at 187; *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex. 1997). The insurer's duty to defend is determined entirely by the allegations in the pleadings and the language of the insurance policy. *King*, 85 S.W.3d at 187. All that is needed to invoke the duty are factual allegations which support a claim potentially covered by the policy. *See GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 310 (Tex. 2006). Any doubt that the facts alleged give rise to the duty are resolved in favor of the insured. *See National Union Fire Ins. Co. of Pittsburgh, PA v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex.1997). Facts outside the pleadings, regardless of how easily they can be found or validated, are not ordinarily considered. *GuideOne Elite Ins. Co.*, 197 S.W.3d at 308; *see also Argonaut Sw. Ins. Co. v. Maupin*, 500 S.W.2d 633, 636 (Tex. 1973)("The duty to defend does not depend on what the facts are, or what might be determined finally by the trier of the facts. It depends only on what the facts are alleged to be.").

Both parties moved for summary judgment on the duty to defend. National Union's argument was two-fold: first, the insurer argued that BNSF was barred from coverage because it could not qualify as an insured according to the terms of the policy; second, to the extent BNSF

was an insured, National Union argued that one or more policy exclusions excused it from providing a defense. In its own motion, BNSF argued it was entitled to coverage as an additional insured by the terms of the policy. The railroad further argued that the petitions in the underlying case established its right to a defense, and that the policy exclusions are not applicable or not established as a matter of law.

We begin by considering whether BNSF qualifies as an "additional insured" under the terms of the CGL policy. The policy provides coverage for bodily injury and property damage, and obligates National Union to defend any suit seeking damages for such injuries. Section II of the CGL policy defines "WHO IS AN INSURED" as those individuals, partnerships, or organizations listed in the policy declaration.[2] Who is an insured is amended by an "Additional Insured" endorsement page attached to the policy. The endorsement states, "(Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of 'your work' for that insured by or for you." The endorsement provides further:

> BLANKET - AS REQUIRED BY WRITTEN CONTRACT, BUT ONLY WITH
> RESPECT TO LIABILITIES ARISING OUT OF THEIR OPERATIONS
> PERFORMED BY OR FOR THE NAMED INSURED, BUT EXCLUDING
> ANY NEGLIGENT ACTS COMMITTED BY SUCH ADDITIONAL INSURED.

Whether BNSF can be considered an "additional insured" requires us to construe the meaning of these contract terms. Insurance contracts are interpreted according to the general rules of contract construction. *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). The primary concern in interpreting a contract is to determine the true intent of the

---

[2] SSI Mobley is the "named insured" under the policy.

parties. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). When a policy permits only one interpretation, we construe it as a matter of law and enforce it as written. *Upshaw v. Trinity Cos,*, 842 S.W.2d 631, 633 (Tex. 1992).[3] When the term to be construed is unambiguous, we will construe the language according to the plain meaning of the words. *Archon Investments, Inc. v. Great Am. Lloyds Ins. Co.*, 174 S.W.3d 334, 338 (Tex.App.--Houston [1st Dist.] 2005, pet. denied).

According to the plain meaning of the language used in the endorsement, BNSF is entitled to coverage for liability arising from bodily injury or property damage caused by SSI Mobley's operations, and is not covered for claims alleging the railroad's own negligence. Therefore, BNSF qualifies as an "additional insured" if the plaintiffs in the underlying lawsuits sought recovery based on SSI Mobley's negligence and not the railroad's. For this inquiry, we must apply the "eight corners rule," and compare the policy provisions as stated above, to the allegations in the underlying petition. *See King*, 85 S.W.3d at 187.

When applying the eight-corners rule, a reviewing court interprets the allegations in the petition liberally, and resolves any doubts in favor of the duty to defend. *KLN Steel Prod. Co., Ltd.*, 278 S.W.3d at 435. The insured need only show that a reasonable reading of the allegations would allow evidence of a claim that is covered by the policy, not that the claim itself be clearly demonstrated by the language of the pleadings. *KLN Steel Prod. Co., Ltd.*, 278 S.W.3d at 435. In addition, the reviewing court must read the underlying petitions in light of the insurance policy's provisions, and focus the analysis on the "origin of the damages rather than on the legal

---

[3] Neither party argues that the "Who is insured provision" or the "additional insured" endorsement are ambiguous or create an ambiguity in the meaning of the policy.

theories alleged." *Nat'l Union Fire Ins., Co.*, 939 S.W.2d at 141; *see also Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673, 676 (Tex.App.--Houston [14th Dist.] 1993, writ denied)("It is not the cause of action alleged which determines coverage but the *facts* giving rise to the alleged actionable conduct.").

BNSF relies on the following passage from the Rosales's third amended and the Lara's sixth amended petitions to establish the underlying suits fall within coverage under the policies:

> 4.    The Railroad has two (2) methods it uses to control vegetation. One is mechanical weed control, that is using shredders on tractors to mow weeds. The second method is chemical weed control. Even through this duty is a non-delegable duty, the Railroad contracts out both methods of weed control. The Railroad had a contract with SS Mobley Company to carry out chemical weed control. SS Mobley failed to use reasonable care to carry out its chemical weed control, and because of its improper timing and application of chemical weed control, there was excessive vegetation at the crossing at the time of the collision, which proximately caused the collision.

As a preliminary matter, National Union attempts to demonstrate that BNSF failed to establish its right to coverage by citing to several pieces of extrinsic evidence. We cannot consider such evidence under the eight-corners rule. *See King*, 85 S.W.3d at 187. The Texas Supreme Court has continually, and recently, declined to create an exception to the eight-corners rule which would allow consideration of extrinsic evidence in determining whether an insurer owes a duty to defend. *See Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009); *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 497 (Tex. 2008); *GuideOne Elite Ins. Co.*, 197 S.W.3d at 310-11. Therefore, our analysis will focus exclusively on the language of the policy and the allegations in the petitions.

Relying on the additional insured endorsement, National Union argues it has no duty to

defend BNSF because the Lara and Rosales petitions include allegations that BNSF was at fault for the collision. The Texas Supreme Court has recently rejected this argument in *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 665-66 (Tex. 2008). In key respects, the facts in *Evanston* are parallel to the facts presented here: Atofina hired a contractor, Triple S, to perform maintenance at its oil refinery. Atofina was an additional insured on Triple S's indemnity policy with Evanston Insurance Company. A Triple S employee was killed while servicing equipment at the refinery, and the employee's family sued Atofina along with Triple S. Triple S was later dismissed from the suit. Atofina asserted its status as an additional insured and requested coverage related to the remaining litigation. Evanston denied the request, arguing that Atofina was not an additional insured because the policy language did not cover an additional insured for its own negligence. *Evanston*, 256 S.W.3d at 663-64. The additional insured endorsement at issue in *Evanston* provided coverage for:

> A person or organization for whom [Triple S] [has] agreed to provide insurance as is afforded by this policy; but that person or organization is an insured only with respect to operations performed by [Triple S] or on [Triple S's] behalf, or facilities owned or used by [Triple S].

*Id*. at 664.

Atofina, much like BNSF, claimed it was covered by the endorsement because it was an organization for whom Triple S had agreed to provide insurance. *Id*. Evanston, much like National Union, countered by arguing that Atofina was not an additional insured because the endorsement did not cover an additional insured for the additional insured's own negligence. *Evanston*, 256 S.W.3d at 664.

Although the focus of the *Evanston* decision was indemnity coverage, the Court reiterated

that the insurer must "determine its duty to defend solely from terms of the policy and the pleadings of the third-party claimant." *Id*. at 665 [Internal quotations omitted]. The Court then rejected the fault-based interpretation of the additional insured endorsement. *Id*. at 666. In determining the effect of the policy's limitation of coverage based on allegations that the additional insured itself was negligent, the Court held "[t]he particular attribution of fault between insured and additional insured does not change the outcome." *Id*. The Court also noted that had the parties intended to insure Atofina only for vicarious liability, such language was available. *Id*.

In accordance with *Evanston*, we conclude that BNSF qualifies as an additional insured under SSI Mobley's CGL policy, and National Union breached its duty to defend. There is no dispute that the injuries at the center of the underlying lawsuit constitute "bodily" injuries as defined by the policy. The Lara and Rosales families alleged, in part, that SSI Mobley did not carry out its chemical weed control with reasonable care. SSI Mobley's negligence resulted in the overgrowth of vegetation which obstructed the view of the crossing and led to the collision. The fact that the petitions also contain factual allegations also charging BNSF was at fault for the collision; either because of its delegation of weed control to SSI Mobley, or because of its failure to properly supervise and manage SSI Mobley's work does not change the insurer's duty to defend the entire suit. *See ATOFINA*, 256 S.W.3d at 665-66; *Zurich Am. Ins. Co.*, 268 S.W.3d at 495-96.

Having determined BNSF established its right to coverage as an additional insured, our final inquiry in Issue Two, is whether the "PRODUCTS- COMPLETED OPERATIONS HAZARD" exclusion negates National Union's duty to defend. This exclusion states, "[t]his

-10-

insurance does not apply to 'bodily injury' or 'property damage' included within the 'products-completed operations hazard.'"  The CGL defines "Products-completed operations hazard" as follows:

> 11.a   'Products-completed operations hazard' includes all 'bodily injury' . . . occurring away from premises [SSI Mobley] [owns] or [rents] and arising out of '[SSI Mobley's] product' or '[SSI Mobley's] work' except
>
> .   .   .
>
> (2)   Work that has not yet been completed or abandoned.
>
> > b.   '[SSI Mobley's] work' will be deemed completed at the earliest of the following times:
> >
> > > (1)   When all of the work called for in [SSI Mobley's] contract has been completed.
> > >
> > > (2)   When all of the work to be done at the site has been completed if [SSI Mobley's] contract calls for work at more than one site.
> > >
> > > (3)   When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or sub-contractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

We begin with the premise that the policy covers bodily injuries.  The "products-completed operations hazard" endorsement provides an exclusion from that coverage.  The exclusion bars coverage which arises out of SSI Mobley's work or product, and occurs away from SSI Mobley's premises.  According to the record before us, the underlying bodily injuries occurred at a BNSF crossing, away from SSI Mobley's premises.  According to the Lara's and Rosales's petitions, SSI Mobley's negligent weed control operations contributed to the collision.

-11-

Therefore, pursuant to paragraph "a." the facts before us seem to fall within the exclusion. This is not the end of our analysis however.

The parties agree that ultimately the controlling issue is whether SSI Mobley's work at the crossing was completed at the time of the collision. The point of contention is how to characterize the language in paragraph "a.(2)" and paragraph "b" of the exclusion. BNSF characterizes these provisions as additional elements of the exclusion, and argues it was National Union's burden to establish that SSI Mobley's work was complete at the time of the collision in order to demonstrate that the exclusion applies. In response, National Union characterizes the provisions as exceptions to the exclusion and concludes it was BNSF's burden to demonstrate that SSI Mobley's work at the crossing was not complete. To settle this dispute, we again turn to our principles of contract interpretation.

As in our discussion of the "additional insured" provision above, we are faced with an unambiguous contract provision and must construe the definition of this exclusion according to the plain meaning of the words chosen by the parties. *See Archon Investments, Inc.*, 174 S.W.3d at 338. In this instance, the presence of the word "*except*" following the primary definition of the exclusion is determinative. The first clause in paragraph "a." provides the requirements for the exclusion. The exclusion applies to bodily and property injuries: (1) that occur away from SSI Mobley's premises; and (2) that arise out of SSI Mobley's work or product. *See Houston Building Serv. Inc. v. Am Gen. Fire & Cas. Co.*, 799 S.W.2d 308, 309-10 (Tex.App.--Houston [1st Dist.] 1990, writ denied)(noting an identical products - completed operations hazard definition contained two elements: (1) damage arose out of the insured's work; and (2) damage occurred on premises the insured does not own or lease).

The definition then provides an exception to the exclusion which brings a case back within the policy's coverage if SSI Mobley's work "has not yet been completed or abandoned." Had the parties intended to make proof that the named insured's work was completed as an element of the exclusion, they could have done so. Instead, the provision is worded as an exception to the exclusion. Therefore, in response to the products - completed operations hazard exclusion, it was BNSF's burden to establish SSI Mobley's work was "not complete" at the time of the collision. *See Atl. Mut. Ins. Co.*, 107 S.W.3d at 733 (once the insurer establishes the application of a policy exclusion, the burden shifts back to the insured to demonstrate an exception to the exclusion). In determining whether BNSF met its burden, we are again prohibited from considering extrinsic evidence. *See Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 653-56 (Tex. 2009).

To determine whether SSI Mobley's work was "not completed" at the time of the collision, we must look to sub-paragraph (2). In sub-paragraph (2), we find three definitions of "completed." First, SSI Mobley's work is completed when all of the work called for in its contract with the railroad is complete. The second definition provides that work is completed on a site by site basis, regardless of the status of the work at other locations. Third, work is completed when the site has been put to its intended use. The policy further specifies that the need for ongoing maintenance or service does not prevent the work from being completed for the purposes of the exclusion. The definition which provides the earliest date for completion controls.

Again, we turn to the allegations in the Lara's and Rosales's petitions. *See Pine Oak Builders, Inc.*, 279 S.W.3d at 653-54. The factual allegations regarding SSI Mobley's work at

-13-

the site of the collision are written in the past tense. The allegations refer to SSI Mobley having "failed" to use reasonable care in its work, and that "because of its improper timing and application of chemical weed control," excessive vegetation was permitted to grow. The petitions further allege that "there *was* excessive vegetation at the crossing." [Emphasis added]. All of the allegations related to SSI Mobley's work at the site indicate the company sprayed prior to the collision.

Only "work completed" definition three, which makes the completion date dependant on the length of SSI Mobley's contract, would support the application of this exception. We cannot apply definition three for two reasons: (1) the exception specifically provides that the controlling work completion date is the earliest of the three; and (2) in order to determine when SSI Mobley's work was completed under definition two, we would have to refer to the contract. We are not permitted to consider extrinsic evidence in determining the duty to defend. *See id*.

Neither definition two nor definition three provide support for the proposition that SSI Mobley's work was "not completed" at the time of the collision. Under either definition, when considered in light of the allegations, SSI Mobley's work at the site had been done prior to the collisions. Therefore, BNSF establish the exception, and the products - completed operations hazard exclusion applies and bars coverage. Accordingly, National Union did not have a duty to defend the railroad, and the trial court did not err by granting summary judgment in the insurer's favor on this cause of action. Issue Two is overruled.

In its final issue, BNSF contends the trial court erred by granting National Union's motion for summary judgment on the insurer's duty to indemnify. BNSF's arguments are based entirely on its duty to defend arguments. First, BNSF argues the products - completed operations

hazard exclusion does not apply to bar coverage. Given our conclusion that this argument fails in the duty to defend context, we must also overrule this argument in the indemnity context. Second, the railroad asserts that National Union failed to establish that allegations of BNSF's own negligence prevented it from qualifying as an additional insured under the policy. As we have already discussed at length, BNSF did meet the requirements to qualify as an additional insured under the policy. However, as we have concluded that National Union's coverage exclusion does apply, any coverage BNSF may have been entitled to is negated. Based on our analysis and conclusions above, the trial court did not err in granting summary judgment regarding indemnity, and Issue Three is overruled.[4]

We concluded that the trial court did not err by granting summary judgment in National Union's favor and we affirm the court's judgment.


December 9, 2009

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Carr, JJ.
Carr, J., Not Participating

---

[4] As the summary judgment was properly based on National Union's traditional summary judgment grounds, there is no need to address the propriety of the insurer's no-evidence motion. Accordingly, Issue One is overruled. In addition, having concluded the summary judgment was proper, there is no need to address BNSF's request that the case be remanded for reconsideration of apportionment of liability and attorney's fees and costs. *See* TEX.R.APP.P. 43.3.