The BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY f/k/a The Atchison, Topeka and Santa Fe Railway Company, Petitioner,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Respondent.

No. 10–0064.

Supreme Court of Texas.

Feb. 25, 2011.

Donald E. Herrmann, David E. Keltner, Preston Randolph Mundt, Kelly Hart & Hallman LLP, Fort Worth, Mainess Gibson, Connelly Baker Wotring LLP, Houston, for Petitioner.

Jeffrey Parsons, Darin Lee Brooks, Kristen W. Kelly, Beirne Maynard & Parsons, L.L.P., Houston, for Respondent.

PER CURIAM.

In this insurance coverage dispute The Burlington Northern and Santa Fe Railway Company (BNSF) sought a declarato-

ry judgment that National Union Fire Insurance Company owed duties to defend and indemnify BNSF in a personal injury suit resulting from a collision between one of its trains and an automobile. The trial court granted National Union's motion for summary judgment. The court of appeals affirmed. 334 S.W.3d 235. Because the court of appeals did not consider evidence extrinsic to the pleadings and insurance policy in determining whether National Union owed a duty to indemnify, we reverse the judgment of the court of appeals and remand the case to that court for further proceedings.

In 1994, BNSF contracted with SSI Mobley (Mobley) to control vegetation along certain areas of BNSF's right-of-way. The contract term was "1994 through 1996." Pursuant to the contract, which required Mobley to purchase a comprehensive general liability (CGL) policy naming BNSF as an additional insured, Mobley purchased a CGL policy from National Union.[1]

On August 25, 1995, a collision took place at a railroad crossing between a BNSF train and an automobile. The driver of the car and one of the passengers were killed; the second passenger was injured. Separate suits filed by survivors of the driver and deceased passenger were eventually consolidated. Pleadings in the consolidated suit alleged that excessive vegetation near the crossing obstructed the driver's view of the oncoming train. The pleadings, in part, stated that

> The Railroad had a contract with SS Mobley Company to carry out chemical weed control. SS Mobley failed to use reasonable care to carry out its chemical weed control, and because of its improper timing and application of chemical weed control, there was excessive vege-

tation at the crossing at the time of the collision, which proximately caused the collision.

BNSF tendered defense of the case to National Union. After National Union denied that it had either a duty to defend or indemnify, BNSF filed suit seeking a declaratory judgment that National Union had both duties. While the declaratory judgment suit was pending, BNSF settled the claims arising from the death of the driver. It also reached a high-low settlement agreement with the other claimants: BNSF and the claimants agreed that the claimants would receive $1 million if the jury returned a verdict less than that amount, $8 million if the verdict exceeded that amount, or the claimants would receive the exact amount of the verdict if the jury awarded between $1 million and $8 million. The case was then tried to a jury which returned a plaintiff's verdict of over $27 million. BNSF paid $8 million according to the high-low settlement agreement.

In the declaratory judgment suit, BNSF and National Union filed competing traditional motions for summary judgment and the trial court initially granted partial summary judgment in favor of BNSF. Then BNSF filed a final motion for summary judgment. National Union responded by filing a motion to reconsider and an additional traditional and no evidence motion for summary judgment. The trial court withdrew the partial summary judgment it had granted in BNSF's favor, granted National Union's motion, and entered a take-nothing judgment against BNSF.

The court of appeals affirmed. 334 S.W.3d 235. Citing this Court's decision in *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex.2002), the court applied the eight-corners rule in determining National

---

1. Mobley also purchased an umbrella policy   from National Union.

Union's duty to defend. 334 S.W.3d at 239. The court of appeals first determined that National Union did not have a duty to defend. *Id.* at 244. It then concluded that National Union did not have a duty to indemnify because BNSF's arguments as to National Union's duty to indemnify were "based entirely on its duty to defend arguments." *Id.* at 244. The court of appeals did not consider evidence extrinsic to the policy and the pleadings when reaching its decision that there was no duty to indemnify.

■ BNSF challenges the court of appeals' conclusions as to both National Union's duty to defend and its duty to indemnify. It maintains that the court of appeals (1) incorrectly applied the eight-corners rule when determining whether National Union owed a duty to defend, and (2) erred in failing to consider extrinsic evidence when determining whether National Union had a duty to indemnify.

National Union responds that (1) the court of appeals correctly applied the eight-corners rule, and (2) even if the court of appeals had analyzed National Union's duty to indemnify in light of extrinsic evidence, its conclusion would have been the same: National Union does not have a duty to indemnify BNSF.

As relevant to our consideration of this matter, National Union's policy coverage contains a "completed operations" exclusion which excludes coverage for "all 'bodily injury' and 'property damage' occurring away from premises [Mobley] own[s] or rent[s] and arising out of '[Mobley's] product' or '[Mobley's] work.'" However, the policy also excepts from the completed operations exclusion "[w]ork that has not yet been completed or abandoned." The policy provides that Mobley's work would be "deemed completed" at the earliest of the following times:

(1) When all of the work called for in [the] contract has been completed.

(2) When all of the work to be done at the site has been completed if [the] contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or sub-contractor working on the same project.

The policy also states:

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

■ The duty to defend and the duty to indemnify "enjoy a degree of independence from each other." *D.R. Horton–Tex., Ltd. v. Markel Int'l Ins. Co.,* 300 S.W.3d 740, 743–44 (Tex.2009); *Utica Nat'l Ins. Co. v. Am. Indem. Co.,* 141 S.W.3d 198, 203 (Tex.2004). The duty to defend arises before litigation is completed, *D.R. Horton,* 300 S.W.3d at 744 n. 2, thus the determination as to duty to defend is according to the eight-corners rule wherein only the pleadings and the policy language are considered. *See GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church,* 197 S.W.3d 305, 307 (Tex.2006); *Farmers Tex. County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 82 (Tex.1997). On the other hand, the insurer's duty to indemnify is determined based on the facts actually established in the underlying suit. *Zurich Am. Ins. Co. v. Nokia, Inc.,* 268 S.W.3d 487, 490 (Tex.2008).

In some circumstances the pleadings can negate both the duty to defend and the duty to indemnify. *See Griffin,* 955 S.W.2d at 84. National Union argues that this is such a case and that the court of appeals correctly concluded National Union owes no duty to indemnify.

In *Griffin*, the insurance policy covered bodily injury or property damage "for which any person becomes legally responsible because of an auto accident." *Id.* at 82. Farmers sought a declaratory judgment that it had no duty to defend or indemnify its insured under the facts pled in a suit brought by the victim of a drive-by shooting. *Id.* at 81–82. This Court evaluated the duty to defend under the eight-corners rule and held that a drive-by shooting could not constitute an "accident" as contemplated by the language of the policy. *Id.* at 83. The Court then explained that the pleadings alleging that the plaintiff's injuries resulted from a drive-by shooting likewise negated "any possibility the insurer will ever have a duty to indemnify." *Id.* at 84. In other words, under the facts pled by the plaintiffs it would have been impossible for the insured defendant to show by extrinsic evidence that the loss fell under the terms of the policy. *See id.*

The principle underlying our decision in *Griffin* does not govern this case. Here the court of appeals determined that National Union did not have a duty to defend because the language in the plaintiffs' pleadings referenced Mobley's actions as having happened in the past, so the policy's "completed operations" exclusion precluded a duty to defend. 334 S.W.3d at 244. But unlike the situation in *Griffin*, in this case the pleadings do not show that contractual provisions and other extrinsic evidence cannot possibly bring Mobley's vegetation control operations within coverage of National Union's policy for the 1995 accident when Mobley's contract unquestionably extended through 1996. *See D.R. Horton*, 300 S.W.3d 740, 744–45 (noting that *Griffin* "was not based on a rationale that if a duty to defend does not arise from the pleadings, no duty to indemnify could arise from proof of the allegations in the pleadings").

Assuming, without deciding, that the court of appeals correctly determined that National Union owed no duty to defend, the court nevertheless erred by not considering all the evidence presented by the parties when it determined the question of National Union's duty to indemnify BNSF. Without hearing oral argument, *see* Tex. R.App. P. 59.1, we reverse the court of appeals' judgment and remand the case to that court for further proceedings consistent with this opinion.