COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

 


 
 
 THE BURLINGTON NORTHERN AND SANTA FE RAILWAY
 COMPANY F/K/A/ THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY,
  
                             Appellant,
  
 v.
  
 NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,
  
                             Appellee.
 
 
 §
  
 §
  
 §
  
 §
  
 §
  
  § 
  
 §
 
 
  
  
 No. 08-06-00022-CV
  
 Appeal
 from the
  
 41st Judicial District Court
  
 of El Paso County, Texas 
  
 (TC#
 2000-1286) 
  
 
 
 
 
  
 
 
  
 
 
  
 
 


 

O
P I N I O N

 

            This appeal
arises from a take-nothing summary judgment granted in favor of National Union
Fire Insurance Company of Pittsburgh, Pennsylvania (“National Union”) on claims
that National Union breached its duty to defend and indemnify the Burlington
Northern and Santa Fe Railway Company (“BNSF”) for damages related to a 1995
collision at one of BNSF’s railway crossings. 
In this Court’s original opinion, we affirmed the trial court’s summary
judgment on the basis that National Union established, as a matter of law, that
BNSF was not entitled to coverage.  Burlington N. & Santa Fe Ry. Co. v.
Nat’l Union Fire Ins. Co. of Pittsburgh, Pa., 334 S.W.3d 235, 245 (Tex.App.--El Paso 2009, pet. granted), rev’d, 334 S.W.3d 217 (Tex. 2011)(per
curiam).  The
Texas Supreme Court granted BNSF’s petition for review and reversed on the
question of National Union’s duty to indemnify.  Burlington
N. & Santa Fe Ry. Co., 334 S.W.3d at 220.  In accordance with the Supreme Court’s
opinion, we now reconsider the question of National Union’s duty to indemnify
in light of the extrinsic evidence presented by the parties.[1]
 Burlington N. & Santa Fe Ry. Co., 334 S.W.3d at 220.

            As set out in
the Supreme Court’s opinion, in February of 1994, BNSF entered into a
three-year contract with SSI Mobley for vegetation control along the railroad’s
right-of-ways in Texas.  As part of the
contract, SSI Mobley agreed to purchase a comprehensive general liability
policy and a contractual liability policy insuring itself for one million
dollars per occurrence, or three million dollars aggregate.[2]  SSI Mobley also agreed that BNSF would be
named as an “additional insured” on the policies, with coverage to extend to
incidents occurring within fifty feet of a railroad track.  SSI Mobley purchased the required insurance from
National Union.

            BNSF filed
this lawsuit against National Union following the insurance company’s decision
to deny the railroad’s claims for defense and indemnity for liability arising
out of a railroad crossing accident near Shallowater,
Texas.  On August 25, 1995, two people
were killed and a third was injured when a BNSF train collided with an
automobile.  The decedents’ families
(“Lara” and “Rosales”) sued the railroad alleging, in part, that the collision
was caused by the railroad’s failure to properly maintain the vegetation at the
crossing.  BNSF settled one of the cases,
and the second proceeded to a multi-million dollar jury verdict.

            BNSF and
National Union filed competing summary judgment motions in early 2002.  The trial court denied National Union’s
motion on May 30, 2002.  On June 5, 2003,
the trial court granted partial summary judgment in the railroad’s favor on the
insurance company’s duty to defend and BNSF’s indemnity claim.  The order provided that damages would be
determined at a later date.

            On July 8,
2003, National Union filed a motion to reconsider the partial summary judgment
order.  There is no record that the trial
court ruled on this motion expressly.  On
June 17, 2005, BNSF filed a motion for entry of final summary judgment on
the damages issues remaining from the court’s June 2003 partial summary
judgment.  On October 5, 2005 National
Union filed a second motion for summary judgment, raising both traditional and
no-evidence grounds.  The trial court
entered a final, take-nothing judgment in National Union’s favor on December
27, 2005.  The court withdrew its June 5,
2003, partial summary judgment order and denied the railroad’s motion for entry
of summary judgment on the damages issue. 
The trial court also granted National Union’s October 5 motion for
summary judgment “in all things.”  BNSF
filed its notice of appeal on January 26, 2006. 
This Court held that because the language in the plaintiff’s pleadings
referenced SSI Mobley’s actions as having happened in the past, the policy’s
“completed operations” exclusion precluded a duty to defend.  Burlington
N. & Santa Fe Ry. Co., 334 S.W.3d at 244; Burlington N. & Santa Fe. Ry. Co., 334 S.W.3d at 220.  We
also held that because BNSF’s arguments relative to the duty to indemnify were
based entirely on its duty to defend arguments, the trial court did not err in
granting summary judgment regarding indemnity.  Burlington
N. & Santa Fe Ry. Co., 334 S.W.3d at 245.  The Supreme Court reversed, holding that we
erred by not considering all of the evidence presented by the parties in
determining whether National Union had a duty to indemnify.  Burlington N. & Santa Fe. Ry. Co., 334 S.W.3d at 220.

            When both
sides move for summary judgment, and the trial court grants one motion and
denies the other, the reviewing court considers both sides’ summary judgment
evidence and determines all issues presented. 
Valence Operating Co. v. Dorsett, 164 S.W.3d
656, 661 (Tex. 2005).  The
reviewing court must consider all the grounds presented in both motions, and
render the judgment the trial court should have rendered.  Id. 
The cross motions in this case presented both traditional and
no-evidence grounds for summary judgment. 
See Tex.R.Civ.P. 166a(c) and 166a(i).  However, given
the procedural posture of the case to date, in this opinion we reconsider only
the traditional and no-evidence motions for summary judgment filed by National
Union on the issue of whether it owed a duty to defend and indemnify BNSF.

An appellate court reviews summary judgment de
novo.  Provident
Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003).

            We first reexamine
National Union’s traditional motion under Rule 166a(c).  The standards for reviewing traditional
summary judgments are well established. 
In a traditional summary judgment proceeding, the standard of review on
appeal asks whether the successful movant carried the burden to show that there
is no genuine issue of material fact, and that the judgment was properly
granted as a matter of law.  See Tex.R.Civ.P.166a(c); Fertic v. Spencer, 247 S.W.3d 242, 248 (Tex.App.--El Paso 2007, pet. denied).  Thus, the question before the reviewing court
is limited to whether the summary judgment proof establishes as a matter of law
that there is no genuine issue of material fact as to one or more elements of
the underlying claim.  See Fertic, 247 S.W.3d at 248.  To resolve this question, the reviewing court
will take all evidence favorable to the non-movant as true; and all reasonable
inferences, including any doubts, must be resolved in the non-movant’s
favor.  Id., citing
Nixon v. Mr. Property Mgmt. Co., Inc., 690 S.W.2d 546, 548-49 (Tex. 1985).

            BNSF contends
the trial court erred in granting summary judgment on its duty to defend claim
by misapplying the “eight corners rule.” 
National Union responds by arguing that the trial court was correct in
concluding that the petitions in the underlying personal injury lawsuits fail
to allege any fact that could potentially place the claims within coverage
provisions.

            Whether a duty
to defend exists is a question of law, reviewed de novo.  KLN Steel Prod.
Co., Ltd. v. CNA Ins. Cos.,
278 S.W.3d 429, 434 (Tex.App.--San Antonio 2008, pet.
denied).  The insured
bears the initial burden to establish that its claim falls within the scope of
coverage provided by the policy.  CNA
Ins. Cos., 278 S.W.3d at 434.  Should the insured establish a right to
coverage, the burden then shifts to the insurer to demonstrate that the claim
is subject to a policy exclusion.  Venture Encoding Serv.,
Inc. v. Atl. Mut. Ins.
Co., 107 S.W.3d 729, 733 (Tex.App.--Fort
Worth 2003, pet. denied). 
If the insurer is able to establish that an exclusion
applies, the burden shifts back to the insured to show that an exception to the
exclusion brings the claim back within the terms of the policy.  Venture Encoding Serv., Inc., 107 S.W.3d at
733.

            Generally, the
duty to defend is dependent on the type and scope of coverage provided by the
policy agreement.  See King v. Dallas
Fire Ins. Co., 85 S.W.3d 185, 187 (Tex.
2002).  An insurer’s duty to defend is
determined according to the “eight corners,” or “complaint allegations”
rule.  See id. at
187; Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 821 (Tex.
1997).  The insurer’s duty to defend is
determined entirely by the allegations in the pleadings and the language of the
insurance policy.  King, 85 S.W.3d at 187.  All
that is needed to invoke the duty are factual allegations that support a claim
potentially covered by the policy.  See GuideOne Elite Ins.
Co. v. Fielder Road Baptist Church, 197 S.W.3d 305, 310 (Tex. 2006).  Any doubt that the facts alleged give rise to the duty are resolved in favor of the insured.  See National Union Fire Ins. Co. of
Pittsburgh, PA v. Merchants Fast Motor Lines, Inc., 939 S.W.2d 139, 141
(Tex. 1997).  Facts outside the
pleadings, regardless of how easily they can be found or validated, are not
ordinarily considered.  GuideOne Elite Ins. Co., 197 S.W.3d at 308; see
also Argonaut Sw. Ins. Co. v. Maupin, 500 S.W.2d 633, 636 (Tex. 1973)(“The
duty to defend does not depend on what the facts are, or what might be
determined finally by the trier of the facts. 
It depends only on what the facts are alleged to be.”).

            National
Union’s summary judgment argument was two-fold: 
first, that BNSF was barred from coverage because it could not qualify
as an additional insured according to the terms of the policy; second, to the
extent BNSF was an additional insured, National Union argued that one or more
policy exclusions excused it from providing a defense.  In its own motion, BNSF argued it was
entitled to coverage as an additional insured by the terms of the policy.  The railroad further argued that the
petitions in the underlying case established its right to a defense, and that
the policy exclusions are not applicable or not established as a matter of law.

            Once again, we
must determine whether BNSF qualifies as an “additional insured” under the
terms of the CGL policy.  The policy
provides coverage for bodily injury and property damage, and obligates National
Union to defend any suit seeking damages for such injuries.  Section II of the CGL policy defines “WHO IS
AN INSURED” as those individuals, partnerships, or organizations listed in the
policy declaration.[2]  Who is an
insured is amended by an “Additional Insured” endorsement page attached to the
policy.  The endorsement states, “(Section
II) is amended to include as an insured the person or organization shown in the
Schedule, but only with respect to liability arising out of ‘your work’ for
that insured by or for you.”  The
endorsement provides further:

BLANKET - AS REQUIRED BY WRITTEN CONTRACT, BUT ONLY WITH
RESPECT TO LIABILITIES ARISING OUT OF THEIR OPERATIONS PERFORMED BY OR FOR THE
NAMED INSURED, BUT EXCLUDING ANY NEGLIGENT ACTS COMMITTED BY SUCH ADDITIONAL
INSURED.

 

            Whether BNSF
can be considered an “additional insured” requires us to construe the meaning
of these contract terms.  Insurance
contracts are interpreted according to the general rules of contract
construction.  American
Mfrs. Mut. Ins. Co.
v. Schaefer, 124 S.W.3d 154, 157 (Tex. 2003).  The primary concern in interpreting a
contract is to determine the true intent of the parties.  Nat’l Union Fire Ins. Co. of Pittsburgh,
PA v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995).  When a policy permits only one
interpretation, we construe it as a matter of law and enforce it as
written.  Upshaw v. Trinity Cos.,
842 S.W.2d 631, 633 (Tex. 1992).[3]  When the term to be
construed is unambiguous, we will construe the language according to the plain
meaning of the words.  Archon
Investments, Inc. v. Great Am. Lloyds Ins. Co., 174 S.W.3d 334, 338 (Tex.App.--Houston
[1st Dist.] 2005, pet. denied).

            According to
the plain meaning of the language used in the endorsement, BNSF is entitled to
coverage for liability arising from bodily injury or property damage caused by
SSI Mobley’s operations, and is not covered for claims alleging the railroad’s
own negligence.  Therefore, BNSF
qualifies as an “additional insured” if the plaintiffs in the underlying
lawsuits sought recovery based on SSI Mobley’s negligence and not the
railroad’s.  For this inquiry, we must
apply the “eight corners rule,” and compare the policy provisions as stated
above, to the allegations in the underlying petitions.  See King, 85 S.W.3d
at 187.

            When applying
the eight-corners rule, a reviewing court interprets
the allegations in the petition liberally, and resolves any doubts in favor of
the duty to defend.  KLN
Steel Prod. Co., Ltd., 278 S.W.3d at 435. 
The insured need only show that a reasonable reading of the allegations
would allow evidence of a claim that is covered by the policy, not that the
claim itself be clearly demonstrated by the language of the pleadings.  Id.  In addition, the reviewing court must read
the underlying petitions in light of the insurance policy’s provisions, and
focus the analysis on the “origin of the damages rather than on the legal
theories alleged.”  Nat’l Union Fire
Ins., Co., 939 S.W.2d at 141; see also Adamo
v. State Farm Lloyds Co., 853 S.W.2d 673, 676 (Tex.App.--Houston
[14th Dist.] 1993), writ denied, 864
S.W.2d 491 (Tex. 1993), cert denied,
511 U.S. 1053, 114 S.Ct. 1613, 128 L.Ed.2d 340 (1994)(“It is not the cause of action alleged which determines
coverage but the facts giving rise to the alleged actionable conduct.”)[Emphasis in orig.].

            BNSF relies on
the following passage from the Rosales’s third amended and Lara’s sixth amended
petitions to establish the underlying suits fall within coverage under the
policies:

4.         The
Railroad has two (2) methods it uses to control vegetation.  One is mechanical weed control,
that is using shredders on tractors to mow weeds.  The second method is chemical weed control.  Even though this duty is a non-delegable
duty, the Railroad contracts out both methods of weed control.  The Railroad had a contract with SS Mobley
Company to carry out chemical weed control. 
SS Mobley failed to use reasonable care to carry out its chemical weed
control, and because of its improper timing and application of chemical weed
control, there was excessive vegetation at the crossing at the time of the
collision, which proximately caused the collision.

 

            As a
preliminary matter, National Union attempts to demonstrate that BNSF failed to
establish its right to coverage by referring to several pieces of extrinsic
evidence.  We cannot consider such
evidence under the eight-corners rule.  See King, 85 S.W.3d
at 187.  The Texas Supreme Court
has continually declined to create an exception to the eight-corners
rule that would allow consideration of extrinsic evidence in determining
whether an insurer owes a duty to defend. 
See Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co., 279
S.W.3d 650, 654 (Tex. 2009); Zurich Am. Ins. Co. v. Nokia, Inc., 268 S.W.3d 487, 497 (Tex. 2008); GuideOne Elite Ins. Co.,
197 S.W.3d at 310-11. 
Therefore, our analysis will focus exclusively on the language of the
policy and the allegations in the petitions.

            Relying on the
additional insured endorsement, National Union argues it has no duty to defend
BNSF because the Lara and Rosales petitions include allegations that BNSF was
at fault for the collision.  The Texas
Supreme Court rejected this argument in Evanston Ins. Co. v. ATOFINA
Petrochemicals, Inc., 256 S.W.3d 660, 665-66 (Tex. 2008).  The facts in Evanston are parallel to those
presented here:  Atofina
hired a contractor, Triple S, to perform maintenance at its oil refinery.  Atofina was an
additional insured on Triple S’s indemnity policy with Evanston Insurance
Company.  A Triple S employee was killed
while servicing equipment at the refinery, and the employee’s family sued Atofina along with Triple S.  Triple S was later dismissed from the
suit.  Atofina
asserted its status as an additional insured and requested coverage related to
the remaining litigation.  Evanston
denied the request, arguing that Atofina was not an
additional insured because the policy language did not cover an additional
insured for its own negligence.  Evanston,
256 S.W.3d at 663-64. 
The additional insured endorsement at issue in Evanston provided
coverage for:

A person or organization for whom [Triple S] [has] agreed to
provide insurance as is afforded by this policy; but that person or organization
is an insured only with respect to operations performed by [Triple S] or on
[Triple S’s] behalf, or facilities owned or used by [Triple S].

 

Id. at 664.

 

            Atofina, much like BNSF, claimed it was covered by the
endorsement because it was an entity for whom Triple S
had agreed to provide insurance.  Id.  Evanston, much like National Union, countered
by arguing that Atofina was not an additional insured
because the endorsement did not cover an additional insured for the additional
insured’s own negligence.  Id.

            Although the
focus of the Evanston decision was indemnity coverage, the Court
reiterated that the insurer must “determine its duty to defend solely from
terms of the policy and the pleadings of the third-party claimant.”  Id. at 665 [Internal
quotations omitted].  The Court
then rejected the fault-based interpretation of the additional insured
endorsement.  Id.
at 666.  In determining the effect
of the policy’s limitation of coverage based on allegations that the additional
insured itself was negligent, the Court held “[t]he particular attribution of
fault between insured and additional insured does not change the outcome.”  Evanston, 256 S.W.3d
at 666.  The Court also noted that
had the parties intended to insure Atofina only for
vicarious liability, such language was available.  Evanston, 256 S.W.3d
at 666.

            In accordance
with Evanston, we again conclude that BNSF qualifies as an additional
insured under SSI Mobley’s CGL policy. 
There is no dispute that the injuries at the heart of the underlying
lawsuit constitute “bodily injuries” as defined by the policy.  The Lara and Rosales families alleged, in
part, that SSI Mobley did not carry out its chemical weed control with
reasonable care and that SSI Mobley’s negligence resulted in the overgrowth of
vegetation which obstructed the view of the crossing and led to the
collision.  The fact that the petitions
also contain factual allegations that BNSF was at fault for the collision – either
because of its delegation of weed control to SSI Mobley or because of its
failure to properly supervise and manage SSI Mobley’s work – does not change
the insurer’s duty to defend the entire suit. 
See Evanston, 256 S.W.3d at 665-66; Zurich
Am. Ins. Co., 268 S.W.3d at 495-96.

            Having
determined BNSF established its right to coverage as an additional insured, we
must next determine whether the “PRODUCTS- COMPLETED OPERATIONS HAZARD”
exclusion negates National Union’s duty to defend.  The exclusion states, “[t]his insurance does
not apply to ‘bodily injury’ or ‘property damage’ arising out of the
‘products-completed operations hazard.’” 
The CGL defines “products-completed operations hazard” as follows:

11.a     ‘Products-completed
operations hazard’ includes all ‘bodily injury’ . . . occurring away from premises
[SSI Mobley] [owns] or [rents] and arising out of ‘[SSI Mobley’s] product’ or
‘[SSI Mobley’s] work’ except

.               .              .

 

(2)        Work
that has not yet been completed or abandoned.

 

            11.b     ‘[SSI Mobley’s]
work’ will be deemed completed at the earliest of the following times:

 

(1)        When all of the work called for in [SSI Mobley’s] contract
has been completed.

 

(2)        When all of the work to be done at the site has been
completed if [SSI Mobley’s] contract calls for work at more than one site. 

 

(3)        When that part of the work done at a job site has been put to
its intended use by any person or organization other than another contractor or
sub-contractor working on the same project.

 

Work that may need service, maintenance, correction, repair or
replacement, but which is otherwise complete, will be treated as completed.

 

            We begin with
the premise that the policy covers bodily injuries.  The “products-completed operations hazard”
endorsement provides an exclusion from that coverage.  The exclusion bars coverage that arises out
of SSI Mobley’s work or product, and occurs away from SSI Mobley’s
premises.  According to the petitions,
the underlying bodily injuries occurred at a BNSF crossing, away from SSI
Mobley’s premises, and SSI Mobley’s negligent weed control operations
contributed to the collision.  Therefore,
pursuant to paragraph “a” the facts before us fall within the exclusion.  The controlling issue is whether SSI Mobley’s
work at the crossing was completed at the time of the collision.  The point of contention is how to
characterize the language in paragraphs “a(2)” and “b”
of the exclusion.  BNSF characterizes
these provisions as additional elements of the exclusion, and argues it was
National Union’s burden to establish that SSI Mobley’s work was complete at the
time of the collision in order to demonstrate that the exclusion applies.  In response, National Union characterizes the
provisions as exceptions to the exclusion and concludes it was BNSF’s burden to
demonstrate that SSI Mobley’s work at the crossing was not complete.  To settle this dispute, we again turn to
principles of contract interpretation.

            As in our
discussion of the “additional insured” provision above, we are faced with an
unambiguous contract provision and must construe the definition of this
exclusion according to the plain meaning of the words chosen by the
parties.  See Archon
Investments, Inc., 174 S.W.3d at 338.  In this instance, the presence of the word “except”
following the primary definition of the exclusion is determinative.  The first clause in paragraph “a.” provides
the requirements for the exclusion.  The
exclusion applies to bodily and property injuries:  (1) that occur away from SSI Mobley’s
premises; and (2) that arise out of SSI Mobley’s work or product.  See Houston Building Serv., Inc. v. Am
Gen. Fire & Cas. Co.,
799 S.W.2d 308, 309-10 (Tex.App.--Houston [1st Dist.]
1990, writ denied)(noting an identical products - completed operations hazard
definition contained two elements:  (1)
damage arising out of the insured’s work; and (2) damage occurring on premises
the insured does not own or lease).

            The definition
then provides an exception to the exclusion which brings a case back within the
policy’s coverage if SSI Mobley’s work “has not yet been completed or
abandoned.”  Had the parties intended to
make proof that the named insured’s work was completed as an element of the
exclusion, they could have done so. 
Instead, the provision is worded as an exception to the exclusion.  Therefore, in response to the products -
completed operations hazard exclusion, it was BNSF’s burden to establish SSI
Mobley’s work was “not complete” at the time of the collision.  See Atl. Mut.
Ins. Co., 107 S.W.3d at 733 (once the insurer establishes the application
of a policy exclusion, the burden shifts back to the
insured to demonstrate an exception to the exclusion).  In determining whether BNSF met its burden,
we again note that we are prohibited from considering extrinsic evidence.  See Pine Oak Builders,
Inc. v. Great Am. Lloyds Ins. Co., 279 S.W.3d 650, 653-56 (Tex. 2009).

            To determine
whether SSI Mobley’s work was “not completed” at the time of the collision, we look
to sub-paragraph (2).  In sub-paragraph
(2), we find three definitions of “completed.” 
First, SSI Mobley’s work is completed when all of the work called for in
its contract with the railroad is complete. 
The second definition provides that work is completed on a site by site
basis, regardless of the status of the work at other locations.  Third, work is completed when the site has
been put to its intended use.  The policy
further specifies that the need for ongoing maintenance or service does not
prevent the work from being completed for the purposes of the exclusion.  The definition providing the earliest date
for completion controls.

            Again, we turn
to the allegations in the Lara’s and Rosales’s petitions.  See Pine Oak Builders,
Inc., 279 S.W.3d at 653-54.  Previously,
we held that because the factual allegations regarding SSI Mobley’s work at the
site of the collision were written in the past tense, the completed operations
exclusion precluded a duty to defend.[3]
 However, use of the past tense in
drafting allegations for a petition is not particularly unusual given that a
petition is rarely, if ever, drafted contemporaneously with the events described
in the petition. As such, use of the past tense in this circumstance cannot be
determinative.

            The first
“work completed” definition makes the completion date dependent on the length
of SSI Mobley’s contract.  The other two
definitions would also require us to refer to the contract between BNSF and SSI
Mobley. Given that we are not permitted to refer to extrinsic evidence in
determining the duty to defend, we have no way of knowing the length of SSI
Mobley’s contract. See
Pine Oak Builders, Inc., 279 S.W.3d at 654.  In light of that restriction, we do not know
whether work was completed on a site by site basis, regardless of the status of
the work at other locations or whether work was completed when the site was put
to its intended use.

            However, we
are to interpret the allegations in the petition liberally and resolve any
doubts in favor of the duty to defend.  KLN Steel Prod. Co., Ltd., 278 S.W.3d at 435.  BNSF need only demonstrate that a reasonable
reading of the allegations would permit evidence of a claim that is potentially
covered by the policy, and not that the claim itself is clearly demonstrated by
the language of the petition.  National Union Fire Insurance Co., 939 S.W.3d at 141.  All
that is needed to invoke the duty are factual allegations that support a claim
potentially covered by the policy.  See GuideOne Elite
Ins. Co., 197 S.W.3d at 310.

The Lara’s and Rosales’s petitions allege that
BNSF had a contract with SSI Mobley at the time of the collision and that the
contract was for chemical weed control.  They allege that SSI Mobley failed to use
reasonable care to carry out its chemical weed control, and that the improper
timing and application of chemical weed control was such that excessive
vegetation existed at the site at the time of the collision proximately causing
the collision.[4]  A reasonable reading of these and the other
allegations in the petitions, and liberally interpreting them as we are
required to do, would permit evidence of a claim that is potentially covered by
the policy.  See Adamo, 853 S.W.2d at 676 (“It is not
the cause of action alleged which determines coverage but the facts giving rise to the alleged actionable
conduct.”)[Emphasis in orig.].  In other words, BNSF met its burden to
establish an exception to the exclusion.  See Pine Oak Builders, Inc., 279 S.W.3d at 653-56.

            Given that
BNSF met the requirements to qualify as an additional insured under the policy
and inasmuch as National Union’s coverage exclusion does not apply, we conclude
that National Union owed a duty to defend. 
Accordingly, the trial court erred by granting summary judgment on this
issue.

            Next, BNSF
contends the trial court erred by granting National Union’s traditional and
no-evidence motion for summary judgment on the insurer’s duty to indemnify.

The duty to indemnify is separate and distinct
from the duty to defend.  See Utica Nat’l Ins. Co. of Texas v. Am. Indem. Co.,
141 S.W.3d 198, 203 (Tex. 2004).  One duty may exist without the other.  Farmers Texas County Mutual Ins. Co. v. Griffin, 955 S.W.2d 81, 82
(Tex. 1997). To that extent, the duties enjoy a degree of
independence.  See Trinity Universal Ins. Co. v. Cowan, 945
S.W.2d 819, 821-22 (Tex. 1997). 
While the duty to defend is limited by the “eight corners doctrine,” the
duty to indemnify is under no such restriction and is dependent on the facts
established in the underlying suit.  Pine Oak Builders, Inc., 279 S.W.3d at 656. 
The insurer’s duty to indemnify depends on the facts proven and whether
the damages caused by the actions or omissions proven are covered by the terms
of the policy.  D.R. Horton – Texas, Ltd. v. Markel International Insurance Co., Ltd., 300
S.W.3d 740, 744 (Tex. 2009).  In other
words, a reviewing court is obligated to consider evidence extrinsic to the
pleadings and the insurance policy in determining whether an insurer owes a
duty to indemnify.  Id.; see also Burlington Northern and Santa Fe Railway Co., 334
S.W.3d at 220.

            In its motions
for summary judgment, National Union essentially argued that:  (1) SSI Mobley’s contractual scope of work did
not extend to the vegetation; (2) SSI Mobley was not working at the railroad
crossing at issue when the accident occurred; (3) neither the CGL nor the
umbrella policy provide coverage for the bodily injuries at issue in this case
inasmuch as the policies exclude coverage for bodily injuries that occur away
from SSI Mobley’s premises and arise out of SSI Mobley’s work unless SSI Mobley’s
work was not completed; (4) BNSF did not settle losses covered by the policies;
and (5) BNSF’s own negligent acts were the sole source of its settlement
liabilities.  In other words, to defeat
National Union’s motions for summary judgment on the issue of indemnity, BNSF
was obligated to present evidence that BNSF qualified as an additional insured
under the policy and that SSI Mobley’s work was not complete at the time of the
accident.  We have already determined
that BNSF was an additional insured under the policies.  The only question then is whether SSI Mobley’s
work at the accident site was complete at the time the accident occurred.

We are obligated to take all evidence
favorable to BNSF, the non-movant, as true, and all reasonable inferences,
including any doubts, must be resolved in BNSF’s favor.  See
Nixon, 690 S.W.2d at
548-49.  However, where the trial
court’s summary judgment order does not state the basis for its decision, we must uphold the order if any of the theories
advanced in the motion are meritorious.  Provident Life & Accident
Ins. Co. v. Knott, 128 S .W.3d 211, 216 (Tex. 2003).

BNSF and/or National Union presented evidence
that showed:  (1) SSI Mobley’s CGL Contractual
Liability policies named BNSF as an additional insured; (2) the policies
provided coverage for incidents occurring within 50 feet of a railroad track;
(3) SSI Mobley had a vegetation control contract with BNSF covering the years
1994 – 1996 and the contract had not expired or terminated at the time of the
accident; (4) SSI Mobley was obligated under the terms of the contract to
perform vegetation control so as to meet the satisfaction of BNSF’s chief
engineer; (5) SSI Mobley’s contract with BNSF called for SSI Mobley to control
vegetation for 30 feet on each side of the centerline of the railroad track;
(6) SSI Mobley anticipated, expected, and compensated for a “drift” of between
two and twelve feet of the herbicide it sprayed as a result of the spraying
itself and/or other factors; and (7) the vegetation at issue was located some
35-40 feet from the centerline of the railroad track, according to BNSF’s
accident investigator.

This evidence raises fact questions that
defeat National Union’s traditional motion for summary judgment on the duty to
indemnify claim.  Because BNSF has raised
a genuine issue of material fact sufficient to defeat National Union’s
traditional motion for summary judgment, we need not address National Union’s
no-evidence motion for summary judgment. 
Accordingly, we find that the trial court erred by granting National
Union’s motion for summary judgment as to BNSF’s indemnity claim.

In light of the foregoing, we reverse the
judgment of the trial court on the duty to defend and the duty to indemnify,
and remand the case to the trial court for proceedings consistent with this
opinion.

 

 

 

August 29,
2012

                                                                        CHRISTOPHER
ANTCLIFF, Justice

 

Before
McClure, C.J., Rivera, and Antcliff, JJ.











[1]
In its Supplemental Brief on the Issue of Extrinsic Evidence, BNSF urges this
Court to also reconsider our prior holding that National Union had no duty to
defend.  National Union adamantly opposes
BNSF’s request noting that the Supreme Court did not address this issue.  See
Burlington N. & Santa Fe Ry. Co., 334 S.W.3d at 220.
 As noted above, the Supreme Court
determined that we erred by not considering extrinsic evidence relative to
National Union’s duty to indemnify.  This
Court ordered the parties to submit supplemental briefs on the issue of
National Union’s duty to defend, if any.  See
Garrett v. State, 749 S.W.2d 784, 786 (Tex.Crim.App.
1986), overruled on other grounds by
Malik v. State, 953 S.W.2d 234 (Tex.Crim.App.
1997)(holding that “[o]nce
jurisdiction of an appellate court is invoked, exercise of its reviewing
functions is limited only by its own discretion or a valid restrictive
statute.”).  The parties provided
supplemental briefing in accordance with the Court’s order.  We conclude that the Supreme Court’s holding
was sufficiently ambiguous, particularly in light of BNSF’s arguments to the
Supreme Court that we erred in our application of the “eight-corners
rule,” such that we should reconsider the duty to defend issue in addition to
the indemnity issue.

 





[2] In relevant part, the
contract’s “Insurance Provision” provided as follows:

 

Contractor shall, at its sole cost and expense,
provide:

 

.               .                .

 

(b)           Comprehensive General Liability and
Contractual Liability Policy insuring the Contractor for one million each
occurrence/three million dollars aggregate ($1,000,000/$3,000,000). The Company
will be named as an additional insured. 
The insurance must provide for coverage of incidents occurring within
fifty (50) feet of a railroad track, and any provision to the contrary in the
insurance policy must be specifically deleted and the insurance certificate
must so state.





[2] SSI Mobley is the
“named insured” under the policy.





[3] Neither party argues
that the “Who is insured provision” or the “additional insured” endorsement is
ambiguous or creates an ambiguity in the meaning of the policy.





[3]
The allegations refer to SSI Mobley having failed
to use reasonable care in its work, and that because of its improper timing and
application of chemical weed control, excessive vegetation was permitted to grow.  The
petitions further allege that there was
excessive vegetation at the crossing. 
All of the allegations related to SSI Mobley’s work at the site indicate
the company sprayed prior to the collision.





[4]
Essentially, the Lara and Rosales families alleged that the application of
chemical weed control by SSI Mobley was insufficient or not properly completed
such that excessive vegetation at the site at the time of the collision was a
proximate cause of the collision.